# CHARLESTON.

HANLY v. POTTS.

52 263
59 381

Submitted January 10, 1902. Decided December 13, 1902.

1. STATUTE OF LIMITATIONS.

H. a merchant and P. a farmer had a settlement in February, 1891, P. executing his note to H. for balance due two hundred and four dollars. P. continued thereafter to deal with H. on open account and selling to H. from time to time for a period of some four years, products from his farm, the price of which was entered as delivered, on the books of H. to the credit of P's. current account, P. did not direct the application of the price of such products; it will be presumed that P. knew how the same was applied, and after the death of P. his administrator will not be allowed to off-set the price of such products against said note, so given on settlement and have the benefit of the statute of limitation against said open account of H. (p. 267).

2. PERSONS IN COMMON—*Gratuitious Services.*

Calvin P. and Mollie P. owned adjoining farms, were both unmarried, were cousins, lived together at the house of M. P., eating at the same table and each furnishing supplies therefor, for a period of at least forty years, until the death of C. P., during which time they kept no accounts between them, never made a settlement, neither presented a bill to, nor made a claim against the other; a part of the stock on the farms, they owned in common, and a part separately and individually; but the stock was fed indiscriminately from the products, and upon both farms; no contract or agreement was made or existed between them for the payment of any board by him, or that either should pay to, or receive from the other anything for services rendered: *Held:* That the relations existing between the parties, and the circumstances were such as to raise the presumption that all such services were gratuitious and neither expected to make any charge against the other or to pay anything to the other. (p. 268).

Appeal from Circuit Court, Mason County.

Suit by John S. Hanly against John B. Potts, administrator, and another. Decree for plaintiff, and defendants appeal.

*Affirmed in part.    Reversed in part.*

J. L. WHITTEN and D. C. CASTO, for appellants.

C. E. HOGG, L. C. SOMMERVILLE, and W. R. GUNN, for appellee.

McWHORTER, JUDGE:

Calvin Potts died in October, 1896, intestate, leaving certain lands and but little personal property. His brother, John Potts, being sole heir at law, to whom his real estate descended. John B. Potts was duly appointed administrator of said Calvin. In December, 1896, John S. Hanly claiming to be a creditor of the said estate, suing on behalf of himself and all other creditors of said decedent, filed his bill in the circuit court of Mason County against John B. Potts, administrator, and John Potts, defendants, alleging that the personal estate of said decedent was wholly insufficient for the payment of the debts of the estate and praying that the cause be referred to one of the commissioners of the court, to ascertain and report the indebtedness of the estate; to whom owing; the respective priority of the debts; how evidenced; to settle the accounts of the administrator; and to ascertain and report of what real estate decedent died seized; and that so much of said real estate as it might be necessary for the purpose, be sold to pay the debts of plaintiff and the other creditors of the estate. The defendants, John B. Potts, administrator, and John Potts, filed their demurrer to the bill, which was overruled, and John Potts filed his answer to which answer plaintiff replied generally. The cause was referred to commissioner H. R. Howard, who was directed to state and report an account showing the real estate of which Calvin Potts died seized and possessed and the liens and priorities thereof, and what other debts besides liens, if any, existed against the estate; in whose favor, and the amount thereof; what personal property said Potts owned at the time of his death, and what disposition had been made of it; the total amount of all valid and subsisting indebtedness against the estate of said decedent and the order of priority of payment if any; to state and settle the accounts of John B. Potts, the administrator, and such pertinent other matters as the parties might request. The commissioner made his report, which was filed on the 26th day of January, 1898. The commissioner

took a large amount of testimony concerning the accounts of the plaintiff, John S. Hanly, and especially of Mollie Potts, who filed a large account against the estate, claiming that she was entitled to recover from the estate, $2,966.52, including interest. This account is made up of twelve different items, besides the interest on two of the items. The defendants, John B. Potts, administrator, and John Potts filed exceptions to said report. Plaintiff Hanly and Mollie Potts also excepted to said report. The last exception mentioned, was that the commissioner, while he found that the rental value. of the real estate of which Potts died seized was one hundred and twenty-five dollars, for the time from which John Potts took possession up to the time of the commencing of his report, he had failed to charge said John Potts with said amount. On the 13th of May, 1898, the defendants moved the court to recommit the report to Commissioner Howard, and filed in support of said motion the affidavit of John Potts, which affidavit, however fails to appear in the record. The court overruled the motion and defendants asked leave to file exceptions to said report in addition to those filed before the commissioner and by him returned with the report. The defendants, John Potts, and John B. Potts, administrator, filed two several pleas besides their answers, to all and each of which the plaintiff replied generally. On the 13th of June the cause was heard upon the bill and exhibits, the said answers, and pleas and replications thereto, upon the report of said Howard and the exceptions thereto by all the parties mentioned, and the notice to creditors to present and prove their claims before said commissioner; and upon the process duly served and published and posted, and all former decrees, orders, and proceedings, when the court overruled all exceptions to said commissioners' report, and ratified and confirmed the same and the decree ascertained indebtedness as shown by the report, confirmed to be one thousand five hundred and forty-eight dollars and seven cents, composed of sixteen separate items. The principal contention in the matter is as to the account of five hundred and fifty-eight dollars and twenty-one cents, decreed to Mollie Potts and the amount of five hundred and eighty-one dollars and ninety-eight cents, decreed to plaintiff John S. Hanly. The report and decree also ascertained that there is due from the administrator to the

estate on account of the personal assets that went into his hands one hundred and ten dollars and fifty-four cents, which is directed to be applied to the debts, and decrees for the sale of the land to pay the residue of such debts, unless the same should be paid by the administrator and heirs at law within the time specified in the decree. From this decree, John B. Potts, the administrator, and John Potts, defendants, appealed. The first error assigned is the overruling, by the court of the second exception by the defendants to the report of commissioner H. R. Howard, because there is allowed and reported therein the sum of five hundred and fifty-eight dollars and twenty-one cents, to Mollie Potts, as indebtedness against the estate of Calvin Potts, deceased. The exceptions to the commissioners' report, filed by the defendants, John B. Potts, administrator, and John Potts, at the May term, 1898, are as follows: "These defendants, and each of them, still relying upon the exceptions to the report of commissioner, H. R. Howard, in the above entitled cause, filed by them with said commissioner on the 24th day of January, 1898, and not waiving them, or any of them, do hereby further except to the said report and specify more fully the grounds of the said exceptions heretofore filed:

*First.* Because there is error in the said report in this—that Mollie Potts, to whom said commissioner allowed in said report as indebtedness against said estate the sum of five hundred and seventeen dollars and fifty cents and forty dollars and seventy-one cents interest, total, five hundred and fifty-eight dollars and twenty-one cents, having filed an account against the estate of Calvin Potts, deceased, in the words and figures following:

CALVIN POTTS TO MOLLIE POTTS,

| 1892. | | Dr. |
|---|---|---|
| To one yoke of oxen sold to Potts, which he sold to E. L. Neale ........................................$ | | 85.00 |
| To young cattle sold to Potts and by him sold to E. L. Neale ............................................ | | 115.00 |
| 1896. | | |
| To sheep sold to William Blain, amounting to $54.00, of which Mollie Potts was entitled to one-half..... | | 27.00 |
| To lambs sold Wesley Cobb, amounting to $63, of which Mollie Potts was entitled to one-half.............. | | 31.50 |
| To hogs sold to E. L. Neale, amounting to $50.00, of which Mollie Potts was entitled to one-half........ | | 25.00 |

| | |
|---|---|
| To wool sold to E. L. Neale, amounting to $36.00, of which Mollie Potts was entitled to one-half........ | 18.00 |
| To cattle sold to William Blain, amounting to $97.00, of which Mollie Potts was entitled to the proceeds of two steers at $11.00 per head..................... | 22.00 |

1894.

| | |
|---|---|
| To hogs sold to Hiram Brown, amounting to $68, of which Mollie Potts is entitled to one-half......... | 34.00 |

1896.

| | |
|---|---|
| Oct. To cash loaned used to pay......................... | 40.00 |
| To board from 1884 to October, 1896, including washing, making and mending clothes, 142 months, at $10.00 per month............................... | 1,420.00 |

1896.

| | |
|---|---|
| To one note made by Calvin Potts to G. W. Potts, Sept. 11th, 1884, due at one day....................... | 52.00 |
| To interest on same..,........................... | 40.56 |
| To note made by Calvin Potts to G. W. Potts, April 31st, 1881, due 12 months after date.............. | 238.00 |
| To interest on above.............................. | 218.96 |
| Total ........................................ | $2,966.52 |

The said commissioner allowed her thereon the sum of five hundred and seventeen dollars and fifty cents as aforesaid, without specifying upon which of the fourteen items thereof such allowance is made, and without showing which of said items are disallowed and rejected; and for this reason these defendants and each of them, ask that said report be recommitted to the same or another commissioner, with direction to rehear this cause as to the claims filed by said Mollie Potts. Because the account of two hundred and seventy dollars and sixty-five cents, allowed in said report in favor of John S. Hanly is part of a store account, and each of the first one hundred and thirty-two items thereof is for an article charged in said store account and purporting to be for merchandise from the store of said Hanly, and none of them appear to have been made within three years preceding the institution of this suit, and these defendants, and each of them, relied upon the statute of limitations before said commissioner as to said one hundred and thirty-two items, amounting to three hundred and ninety-two dollars and eighty-eight cents, and required said commissioner in writing to disallow them, because they were barred by said

statute, but said commissioner allowed the whole of said Hanly's account, five hundred and sixty-four dollars and sixty-three cents, including said one hundred and thirty-two items, deducted therefrom the items of off-sets filed by these defendants, amounting to two hundred and ninety-three dollars and ninety-eight cents, and thus found and allowed for said Hanly against said estate the said sum of two hundred and seventy dollars and sixty-five cents, and in doing so said commissioner erred, because the said accounts were in no sense accounts concerning the trade of merchandise between merchant and merchant, their factors or servants, as appears from the evidence in the case.

These defendants, and each of them also rely upon and here plead the five year statute of limitations as to the first forty-four items, and each of them, in said store account, amounting in all to one hundred and twenty-two dollars and thirty cents, and assigns the allowance of same, and each of them as error in said report. The record contains three hundred and twenty-five pages of testimony, the greater part of which is concerning the claim made by Mollie Potts, and is very conflicting. There is evidence tending to prove and establish the several items of said account, except the item of "forty dollars for cash loaned." The principal part of the testimony on the claim of Mollie Potts is an attempt to establish that item for "Board from 1884, to October, 1896, including washing, making and mending clothes, one hundred and forty-two months at ten dollars per month, one thousand four hundred and twenty dollars." Calvin and Mollie Potts were cousins; neither of them ever married. The evidence shows that they had lived together, at Mollie's house for the past forty years or more, up to the time of the death of Calvin, except a few months in the early '90's, when they had a little falling out, and he left and went elsewhere to board but returned and remained with her. They seemed to have everything in common, except part of the stock; they had sheep and hogs which they owned in partnership; but they owned both sheep and hogs, cattle and horses separately, and individually. The evidence shows that they ate at the same table, lived in the same house and both furnished, to a greater or less extent the supplies for the table. It does not appear that they ever had a settlement, or that either of them ever furnished anything for their living expecting to charge the same to the other,

nor expecting to be charged by the other. No part of the claim for one thousand four hundred and twenty dollars was ever made by Mollie Potts prior to the death of Calvin. It is true the preponderance of evidence shows that Mollie furnished more supplies for the table than Calvin did. Their farms adjoined each other and their stock seemed to be pastured and fed indiscriminately from the products, and upon both farms, and there was evidence tending to show that Calvin looked after and cared for Mollie's place and interests, and it was shown that he did some work and chores about the place; but that he worked very little. There is no evidence that there was any express contract or agreement between them for the payment of any board by him, or that there was ever any understanding that she was to receive anything for her services, or that either was to pay to, or receive from the other any compensation for services or for anything furnished for their common use. In *Rea* v. *Trotter*, 26 Grat. 585, at page 592, Judge Moncure in delivering the opinion of the court said: "Where service is performed by one at the instance and request of another, and especially where that other is personally benefitted by the service, and nothing is said between the parties as to the compensation for such service, the law implies a contract, that the party who performed the service shall be paid a reasonable compensation therefor, unless there be something in the relation of the parties or the circumstances of the case which precludes the idea of such compensation; in which case there would be an implied agreement or understanding that no such compensation was to be paid. This is an undeniable principle of law, which applies to almost every case of *assumpsit* on a *quantum meruit.*" The relation of the parties and the circumstances of the case at bar are decidedly peculiar. The parties had been living together, in the same house and apparently as one family for at least forty years, that during all that time they had never made a settlement, kept no accounts, and neither presented a bill to the other, and no claim was ever made by Mollie Potts against said Calvin Potts, until after his death. *McGarvy* v. *Roods,* 73 Ia. 363. See also 17 Am. & E., E. L. 363 (1st Ed.), and cases there cited.

The exception to the commissioner's report because he failed to show in said report which items of the account filed by said

Mollie Potts were allowed and which were rejected, is well taken. The account filed includes many items and it is impossible to tell from the report which accounts are rejected, and which allowed, except the two notes, one of April 31, 1881, for two hundred and thirty-eight dollars, the other dated Setpember 11, 1884, for fifty-two dollars, which the commissioner reports were disallowed because the statute of limitations had run on them. In *Gage* v. *Arndt*, 121 Ill. 491, where a cause was referred to a master to take and state an account of the sums due the defendant from the plaintiff, for taxes, interest, penalties and costs, growing out of tax sales sought to be set aside it was held: "Not sufficient on such a reference, to report the testimony *en masse,* and the amounts in the aggregate, with no reference to items claimed and disallowed." And in *Ransom* v. *Davis,* 18 Howard, U. S. 295, it is held: "Where a chancery suit involves matters of account, the action of a master should be had in the inferior court, and the items admitted or rejected should be stated, so that exception may be taken to the particular items or class of items, and such a case should be brought before this court on the rulings of the exceptions by the circuit court." And in *Dewing* v. *Hutlon,* 40 W. Va. 521, (Syl. pt. 4) : "When a commissioner to whom a cause is referred to settle large and intricate matters of account, containing many contested items, returns a report showing only an aggregation of items in accordance with his conclusions, and the report is excepted to for this reason, and the circuit court overrules such exceptions and confirms the report; on appeal this Court will reverse the decree of confirmation, and remand the cause, that a proper itemized statement of such accounts may be made." It is contended by appellees, that the relationship existing between the parties, which will preclude recovery for service rendered in the absence of an express promise, must be very near and intimate; as that of parent and child, father-in-law, and son-in-law, or the like, or a relationship implying dependence or assumed obligation extending from the one to the other, and that such relationship does not exist in the case at bar. I confess it is hard to surmise what the relationship has been in this case between the parties. It would seem that in forty years' association between cousins, living together in the same house, although unmarried, would beget a feeling of friendship and

intimacy, even in the absence of all wrong, that would draw them together quite as closely as brother and sister; and even approaching that of husband and wife. It is contended by appellants that the first two items of the claim of Mollie Potts, of eighty-five dollars and one hundred and fifteen dollars, were barred by the statute of limitations; these items date in the fall of 1892, and the suit was brought November 1896, bringing it clearly within five years. The second assignment is that the court erred in confirming the said report of commissioner and decreeing five hundred and fifty-eight dollars and twenty-one cents to Mollie Potts, and the sale of the real estate to pay the same, which is disposed of by what has been said under the former assignment.

The third assignment is that the court erred in overruling defendants third exception to commissioner's report, made to the allowance therein of a store account due plaintiff Hanly, amounting to the sum of two hundred and seventy dollars and sixty-five cents, because the same was barred by the statute of limitations.

The fourth assignment is in confirming said report of commissioner as to the store account of Hanly and the interest thereon, making a total of two hundred and ninety-one dollars and ninety-two cents, and decreeing the same to be paid, and the sale of the real estate to pay it; while the fifth assignment is in overruling the fourth exception to commissioner's report and allowing as indebtedness against said estate the note for two hundred and four dollars and thirty-one cents and eighty-five dollars and seventy-five cents interest thereon, total two hundred and ninety dollars and five cents, in favor of plaintiff Hanly, contrary to the law and the evidence in the case. Hanly and Calvin Potts had a settlement of their accounts and the note was given on the 9th day of February, 1891, by Calvin Potts to Hanly, payable one day after date. Potts did the principal part of his dealing with Hanly and kept a running account with him, after said note was given, said account began on the 18th day of March, 1891, and ran on up to October, 1896, showing purchases and items of account due from him to Hanly in almost every month during that time, and during the same time when Calvin had any produce to sell he let Hanly have it from time to time, and the same was credited on Hanly's

books to said Calvin Potts' account. In April, 1891, he had a credit for wool of sixteen dollars and seventy-five cents, in the year 1892 he had credits for stock and wheat to the amount of about one hundred and thirty dollars, in 1893 he had credits amounting to seventy-six dollars and fifty-five cents, for wool, sheep and lambs, and in 1894, credits to the amount of forty-three dollars and nine cents, for wool, sheep and lambs, and two or three similar payments in 1895 and 1896. The accounts and credits were proven by the clerk of Hanly who kept the accounts and testified to their correctness. It is claimed by appellant that these payments are proper off-sets to said note of two hundred and four dollars and thirty-one cents. There is no evidence that Calvin Potts ever directed the application of any of the produce that he let Hanly have to the payment of the note, and it can hardly be conceived that he would let his account run for four or five years and make payments, by the sale, to the party with whom he was dealing, of the products of his farm and not know how the application thereof was being made. Hanly's books show that the payments were made on the running account, and in the absence of any directions of Potts it was the privilege and right of Hanly to apply it to any indebtedness due him from Potts, as he might elect.

In section 36, first Barton's Law Practice, at page 99, it is said: "If the account sued upon contains credits, either in money or anything else, or if payments in money or other things shall be proved to have been made, they will be applied, in the absence of any special application by the parties themselves, to such portions of the account, if any there be as would otherwise be barred by the statute." Wood on Lim. of Actions, 110; *Genin* v. *Ingersoll,* 11 W. Va. 549. Waterman on Set-off, section 6, gives the distinction between payment and set-off, he says: "Payment is by consent of the parties either express or implied, appropriated to the discharge of a debt." These payments were made by Calvin Potts at different times during a period of some four years, all entered upon the books of his creditor as credits on his current account, and it must be presumed that he knew how the price of the produce furnished by him was being applied. In *Kennedy* v. *Davisson,* 46 W. Va. 433, (Syl. pts. 3 and 4), it is held: "The distinction between payment and set-off is that a payment is, by consent of parties,

express or implied, appropriated to the discharge of the debt, in whole or part," and "What was at first a set-off may, by agreement of the parties applying it, be transformed into a payment." Section 6, chapter 104, Code, 1891, provided that: "An action for an article charged in any store account　＊　＊　＊ may be brought within three years." The act of 1895, amending said section, leaves this three years provision out, thereby placing store accounts on the same footing, as to limitation, as other open accounts, from the date said act went into effect. The account of Hanly against Calvin Potts contained a great many items, not for merchandise, aggregating one hundred and twenty-six dollars and twenty cents, which were subject to the five years' limitation. The amount of his account against Potts, up to the end of October, 1893, which contains the only items which could be affected in this suit by the statute of three years' limitation amounted to three hundred and ninety-three dollars and eighty-three cents, from which deduct the one hundred and twenty-six dollars and twenty cents, which was not liable to the three years limitation, not being for articles of merchandise, leaves the sum of two hundred and sixty-seven dollars and sixty-three cents of Hanly's account liable to the three years' limitation; of the account of credits, paid by Potts, to Hanly, and allowed as credits on said account up to the 17th of September, 1893, being the last credits allowed until in May, 1894, amounted to two hundred and twenty-three dollars and twenty-one cents, which being deducted from the two hundred and sixty-seven dollars and sixty-three cents, leaves the sum of forty-four dollars and forty-two cents of the items which were subject to the three years' limitation and were barred, which amount should have been disallowed, and the decree to Hanly should be reduced by said sum of forty-four dollars and forty-two cents. The application of the residue of credits allowed to Calvin Potts, of seventy dollars and seventy-seven cents, is more than sufficient to relieve from the statute of five years' limitations the residue of thirty-two dollars and fifty-seven cents of Hanly's account, which was liable thereto.

In *Walker* v. *Burgess,* 44 W. Va. 399, (Syl. pt. 1), it is held: "A statute changing the period of limitation will not be applied to antecedent transactions, unless its letter or necessary intent demand a retroactive construction." This disposes of the

fourth assignment. As to the fifth assignment above stated, it has been disposed of with the third. It claims that the payments made by Potts, and claimed as sets-off should have been allowed as against the note for two hundred and ninety dollars and six cents including interest, and the application of the bar and the statute applied to three hundred and ninety-two dollars and eighty-eight cents of Hanly's account against Potts, which it is claimed in the said fifth exception would have shown balance due the estate of Calvin Potts from Hanly of one hundred and four dollars and eighty-eight cents.

The sixth assignment is in confirming the report allowing the said note of two hundred and ninety dollars and six cents, including interest.

The seventh assignment is that the court erred in overruling the exception to the report because the commissioner allowed as indebtedness against the estate twenty-one dollars and eighty-four cents, in favor of A. J. Fowler. This is a claim for servises rendered and seems to be fairly well proven, and no good reason is shown for its disallowance, the same not being mentioned in the brief of appellants' counsel, the commissioner having passed upon the evidence and same being confirmed by the court, the report should not be disturbed by this Court without good reason therefor.

The eighth assignment is that the court erred in overruling the demurrer of defendants to plaintiff's bill, which bill contained sufficient allegations to give the court jurisdiction, alleging the insufficiency of personal assets to pay the debts and the necessity of a resort to the real estate of the decedent to discharge said indebtedness. This assignment does not seem to be relied upon. The suit was brought within about two months after the death of the intestate. In *Poling* v. *Huffman,* 39 W. Va. 320, it is held, (Syl.) : "A bill by a creditor or creditors to discover assets and enforce a debt or claim against the estate real and personal in the hands of the heirs or devisees is not demurrable because filed within six months of the date of the appointment of the personal representative of such estate." The demurrer was properly overruled.

The ninth assignment is that the court erred in entering the decree of February 16, 1897, referring cause to Commissioner Howard because the defendant, John Potts had filed his answer

denying there was anything due, and owing to the plaintiff, and denying that the personal estate of the decedent was insufficient to pay the indebtedness, the plaintiff having taken no proof there was nothing in the case sustaining the allegations of his bill. The bill set up as a part of the indebtedness due plaintiff two notes, one for two hundred and four dollars, dated February 9, 1891, the other for sixteen dollars and seventy cents, dated November 19, 1890, payable to George Reese, or bearer, and assigned by Reese to plaintiff, which notes were exhibited with the bill, while defendant had answered the bill, denying any indebtedness, he had not filed an affidavit as required by section 40, chapter 125, Code; therefore the said notes set up in the bill stood as proof of indebtedness to the extent of their amount, principal and interest. *Robinson* v. *Dix,* 18 W. Va. 528, (Syl. pt. 4) ; *Maxwell* v. *Burbridge,* 44 W. Va. 248, (28 S. E. 702). Referring of the cause to a commissioner to settle the account of the administrator, to ascertain the personal assets, and whether the same would pay the debts, was necessary to be made before a decree for sale of the real estate could be made. Hoggs Eq. Princ., section 457.

The tenth assignment is that the court erred in decreeing a sale of the real estate of Potts. For the reasons herein given, the decree will be reversed, only in so far as it provides for the payment of the claim to Mollie Potts, and as to the item of five hundred and eighty-one dollars and ninety-eight cents decreed to plaintiff, John S. Hanly, the same will be reduced by the said sum of forty-four dollars and forty-two cents, the aggregate of the items barred by the statute of limitations, and as so reduced and amended the same will be affirmed as to said, item, and in all other respects the decree is affirmed, and the cause is remanded with directions to refer the cause back to Commissioner Howard, or some other commissioner of the court, to report upon the claim of Mollie Potts, the amount of which to be ascertained according to the principles laid down in this opinion. The decree of sale to be executed after the coming in of said report and ascertaining the true amount of this claim of Mollie Potts.

*Affirmed in part. Reversed in part.*