# CHARLESTON

## O'NIEL v. TAYLOR et al.

Submitted January 16, 1906.   Decided April 10, 1906.

1. REFERENCE—*Report of Commissioner.*

A commissioner may authorize any person to write his report at his dictation and under his supervision. It is not essential that it should be in his own handwriting.   (p. 376.)

2. MECHANIC'S LIEN—*Account Filed—Sufficiency.*

In a contract directly with the owner, our statute does not require of the contractor an itemized account of work done and material furnished to enable him to procure his mechanic's lien, but he is required to file "a just and true account of the amount due him after allowing all credits, together with a description of the property intended to be covered by the lien sufficiently accurate for identification, with the name of the owner or owners of the property, if known."   (p. 377.)

3. SAME.

A general statement of the demand of such contractor showing its nature and character, and the amount due or owing thereon after allowing all credits is a compliance with the statute,   (p. 377.)

4. SAME—*Filing Lien.*

When repairs, improvements and additions are made to a building under contract directly with the owner and the work prosecuted to completion, dates when the several items of work was done and materials furnished are not material except that it must appear that the last work done and the last material furnished necessary to the completion of the work was done and furnished within sixty days before the filing and recording of the mechanic's lien.   (p. 378.)

5. SAME—*Time of Doing Work and Furnishing Material.*

When a contractor undertakes with the owner to make such repairs, improvements and additions, without a contract price as to the whole work but in the course of the work it is agreed that a certain sum shall be paid for a particular part of the work which is done along with the rest of the work, such sum may constitute one item in the general account, and form a part of the mechanic's lien although the work and material represented by said sum may have been done and furnished more than sixty days prior to the filing of the lien.   (p. 378.)

6. SAME—*Appurtenances to Building.*

Under such general contract with the owner for such work and repairs where walks and fences on the premises are constructed

as appurtenant to such building, and at the same time, the contractor is entitled under our statute to include the same in his mechanic's lien. (p. 379.)

7. SAME—*Property Subject.*

And so, the price of a coal house and sample room, constructed on the premises under such contract appurtenant to and to be used with such building, used as a hotel, is proper to be included in such mechanic's lien. (p. 379.)

8. SAME,

A mechanic's lien may include an item for a drain pipe from the cellar of a house into a sewer in the street. Such drain pipe is a part of the house. (p. 381.)

9. SAME—*Enforcement—Counsel Fees.*

In a suit to enforce mechanic's liens it is error to decree as part of plaintiff's costs "the sum of $300, counsel fees hereby allowed counsel for plaintiff for conducting this suit." (p. 383.)

10. LIENS—*Actions—Sale,*

In a suit to sell real estate to satisfy mechanic's liens and judgment liens and also a subsequent trust lien, which covers a part only of the real estate so to be sold, it is error to decree the sale of the property as a whole. (p. 384.)

Appeal from Circuit Court, Mingo County.

Bill by J. H. O'Niel against Charles B. Taylor and others. Decree for complainant, and defendant Charles B. Taylor appeals.

*Affirmed in part. Reversed in part.*

HOLT & DUNCAN, for appellant.

C. H. JONES, for appellees.

MCWHORTER, PRESIDENT :

J. H. O'Niel filed his bill in equity in the circuit court of Mingo county against Charles B. Taylor, W. B. Cox, Bank of Williamson and others to enforce his mechanic's lien against Lots 1, 2, 3, 4, and 5 in Block No. 17 in the Town of Williamson, the property of defendant Taylor, upon which was located an hotel building and its appurtenances known as the "Hotel Moose," which mechanic's lien was duly recorded on the 31st day of January, 1903, claiming a balance then due of $1,259.35 after allowing all credits to which the defendant was entitled. The defendant W. B. Cox also filed and recorded a mechanic's lien upon the same property claim-

ing a balance due him of $1,544.57 for work and labor and material furnished, including heating apparatus for said hotel, the contract for which heating apparatus amounted to $475.00; also the defendant Georgia Lumber Company filed its lien for material furnished in the construction and repair of the said hotel property claiming a balance of $1,273.24,   The plaintiff in his bill set up his own lien as well as alleging the other mechanic's liens and several judgments against the said C. B. Taylor which were liens upon the said property, as well as a vendor's lien in favor of W. J. Williamson who conveyed the said property to plaintiff for $3,500.00 and interest which was a lien on Lots Nos. 1, 2, 3, and 5 and the undivided half of Lot No. 4 in said Block No. 17.   A decree of reference was made in said suit on the 15th day of May, 1903, to a commissioner of the said court to ascertain the liens upon the said Lots 1, 2, 3, 4, and 5; the holders of such liens and the amount and priorities thereof; the title of said defendant Charles B. Taylor to said real estate and whether or not the rents, issues and profits of said estate for a period of five years would pay off and discharge the said liens against it.

Charles B. Taylor filed his answer denying the validity of the liens of the said plaintiff and of W. B. Cox and the said Georgia Lumber Company and denying especially that if liens at all they covered Lots 1 and 2 of said real estate.   Defendants Cox and the Georgia Lumber Company filed their answers, setting up their respective liens.   On the 15th of September, 1903, the commissioner filed his report showing the various liens upon the said property.   First, the vendor's lien; second, the several mechanic's liens including the interest, that of plaintiff at $1,110.18 and W. B. Cox $1,413.44 and the Georgia Lumber Company $992.26, which three liens were reported as the second lien upon Lots Nos. 1, 2, 3, and 5 and the one-half of Lot No. 4, and the first lien upon the other half of Lot No. 4; and besides the judgment liens reported with their priorities he reported as the ninth lien by virtue of a deed of trust in favor of C. H. Jones, trustee, to secure the payment of $4,000 due by note dated July 31st, 1903, four months after date to the Bank of Williamson, which was the ninth lien on Lots 3, 4, and 5 of Block 17. The Georgia Lumber Company excepted to the report because it did not report the amount properly due on its me-

chanic's lien, to-wit: the sum of $1,330.53. The defendant Charles B. Taylor filed in open court various exceptions to the said report. The depositions taken upon which the commissioner's report is based are filed in the record.

The cause came on to be heard on the 24th day of January, 1904, and the court sustained plaintiff's exceptions Nos. 3, 4, 5, and 10 affecting the lien of the plaintiff and eliminating therefrom the item of $10 for unloading dry lumber, of $7 for unloading framing, $6 for hauling lumber, and $3.95 for payment of freight on material, and sustained the exception No. 4 touching the lien of W. B. Cox and eliminating therefrom the item of $100 for right of sewer on four lots and sustained exceptions to the report allowing several judgments, one in favor of Emmons, Hawkins Hardware Company as the fourth lien, the judgment in favor of Valentine, Newcomb & Carder as part of the fifth lien, the judgment in favor of W. H. H. Holswade as one of the fifth lien, and the judgment in favor of G. A. Northcott & Co., counsel for said lienors stating in court that said judgment liens had been paid off and discharged; and sustained the exception of the Georgia Lumber Company to the said report and overruled all other exceptions; and confirmed the commissioner's report in all other things and decreed the liens upon the property as mentioned in said report as corrected and decreed that several liens be paid by said Taylor with interest on the same respectively from the 6th of September, 1903, until paid, and the costs of this suit decreed to be paid to the plaintiff including the sum of $300 for counsel fees to be taxed as part of the costs. "It is further adjudged, ordered and decreed that the said defendant C. B. Taylor do within thirty days from the rising of this court, pay unto the said W. J. Williamson, J. H. O'Niel, W. B. Cox, The Georgia Lumber Company, a corporation, The Bank of Williamson, a corporation, and The Keystone Hardwood Lumber Company, their said lien debts and judgments respectively as hereinbefore ascertained and adjudicated, with interest thereon *such* respective dates herein named until paid, and the costs of this suit, including the said sum of $300.00, counsel fees allowed counsel for the plaintiff for conducting this suit; and in default of such payment, it is further adjudged, ordered and decreed that the said property, to-wit, Lots Nos. 1, 2, 3, 4, and 5 in Block No.

17 in the said town of Williamson, Mingo county, West Virginia, together with the buildings thereupon situate, or so much thereof as may be necessary to pay off and discharge all of the lien debts and judgments according to their respective priorities, as hereinbefore ascertained and adjudicated, and the costs of this suit, be sold at public auction to the highest bidder at the front door of the court house of said county, on the following terms, to-wit, One-third of such purchase money to be paid cash in hand on the day of sale, and the residue upon a credit of one and two years, the commissioners hereafter appointed to take from the purchaser interest-bearing notes with good security for the deferred payments." And appointed commissioners to make sale accordingly. From this decree the defendant Charles B. Taylor appealed and made eight assignments of error. First, that the court erred in overruling the five exceptions to commissioner Hatfield's report as a whole, which exceptions are: "First: That no notice was given to the attorney for defendant of the completion of said report by said commissioner. Second: Said report was not retained in said commissioner's office for exceptions thereto, by said commissioner. Third: That said report is indefinite as to what credits were allowed the claimants of the several mechanic's liens and no statement made to show what was allowed and what disallowed. Fourth: Said report was made by the commissioner without any examination of the evidence, reported by the stenographer, a portion of said evidence having been taken in the absence of the commissioner. Fifth: That said report was prepared and typewritten by counsel of one of the defendants, W. B. Cox, who was attempting to set up a mechanic's lien against this defendant, exceptor."

As to the first, that no notice was given to the attorney for defendant of the completion of the said report by the said commissioner, and the second, that the report was not retained ten days in his office; the commissioner's report shows and closes with the statement "that the attorneys representing the various parties to this case waived the retention of this report for the usual period of ten days for exceptions thereto and agreed that the same might be filed when completed." This clearly implies that it was the intention of the parties that it should be filed without notice of its completion,

for the only object of retaining the report in the office of the commissioner for ten days is to enable the parties in interest to make such exceptions as they desire and the commissioner to "submit such remarks upon exceptions as he may deem pertinent," besides the parties filed their exceptions in court after the filing of said report, the cause not being heard until January 22nd, 1904, when it was heard as well upon the exceptions as upon the report.

As to the third exception in this group of exceptions, it will be treated with exception "Fourteenth" going to the claim of plaintiff O'Niel. As to the fourth exception mentioned, if the evidence was taken by the commissioner and in his presence it was not necessary that he should read and examine the evidence after it was written out in long hand by the stenographer, if the commissioner properly digested the evidence as it was given, which he did if he was attending to his duties properly as he was presumed to do. It is said, however, that a portion of the evidence was taken in the absence of the commissioner. The only evidence of this fact is the affidavit of H. K. Shumate who says that he was present during the taking of nearly all the depositions filed with the commissioner's report "that during the taking of said depositions said commissioner was frequently engaged in attending to business in the office of the clerk of said court, being a deputy therein, and was at different times absent from the room where taken, while same was being taken by the stenographer." He does not say that the commissioner was out of the hearing of the witness being examined; for all that appears in the affidavit the commissioner might have been in an adjoining room with the door open and while attending to something else might have heard and understood everything that the witness was saying. The presumption is that the commissioner was giving attention to his official duties as commissioner and there is not sufficient evidence of his absence and inattention to overcome such presumption.

The fifth exception "That said report was prepared and typewritten by counsel of one of the defendants, W. B. Cox, who was attempting to set up a mechanic's lien against this defendant, exceptor." In support of the fourth and fifth exceptions the exceptor filed the affidavit of Bert Shumate the stenographer who took down the evidence and states that

he did not deliver to the commissioner the evidence transcribed until September 15th, 1903, after the commissioner had informed him that he had completed his report, "except that part of the evidence relating to the lien of plaintiff, which was delivered to the commissioner before the remainder." That part of the affidavit which is supposed to be the foundation of the fifth exception is "The affiant would further state that he was informed by D. W. Brown, one of the attorneys for the plaintiff, that B. B. Campbell, of counsel for the defendant, W. B. Cox, wrote the report for said commissioner." This is a mere second-hand statement as to what he had been told had been done. The commissioner would be entitled to constitute anyone his amenuensis to write his report at his dictation. It is not shown that he had employed or authorized the said Campbell to prepare his report for him, it is not stated in the affidavit as it is in the exception "that said report was prepared and typewritten by counsel of one of the defendants," but merely that he "wrote the report" for said commissioner. A decree entered by the circuit court is a decree of the court, and yet it is the common practice for the attorney representing the party in whose favor the decree is rendered to prepare and submit the decree to the court which, if found correct, is entered by the court as its decree. Likewise, the commissioner in making his report makes his calculations and arrives at his conclusions and may authorize anyone to write out the same under his direction and supervision. It is not essential that he should write out his report in his own handwriting.

The next exception is: "First: That said pretended lien is defective and invalid, for the following reasons: 1st. That said pretended account is not itemized as the law provides,— especially as to the item of $875.00 for erecting and constructing third story addition to the building mentioned in said lien, and making alterations and improvements in the first two stories thereof—there being no specific contract for said work, at said sum. 2nd. No dates are given for any of the different jobs of work done on said building. 3rd. That the owner of said building and lots mentioned in said lien are not shown or stated therein, as required by statute." As to the item of $875.00 the statute does not in a contract directly with the owner of the property require an itemized account of the

work and material furnished, but the lienor shall file with the clerk of the county court of the county in which the property is situated "a just and true account of the amount due him, after allowing all credits together with a description of the property intended to be covered by the lien sufficiently accurate for identification, with the name of the owner or owners of the property, if known, which account shall be sworn to by the person claiming the lien or some person in his behalf." In Phillips on Mechanic's Liens, section 353: "If the statute giving the lien do not require the notice to itemize the work or materials, it will not be necessary."— Citing *Patrick* v. *Smith*, 120 Mass. 510, and gives an example, "Where the provision was that there should be filed 'a just and true account of the demand due him after deducting all proper credits and assets,' etc., it did not require the items to be set out; a general statement of the demand, showing its nature and character, and the amount due or owing thereon, would be a compliance." *Brennan* v. *Swasey*, 16 Cal. 140; *Selden* v. *Meeks*, 17 Cal. 128. Counsel for defendant Taylor cites the case of *Shackleford* v. *Beck*, 80 Va. 573, where it is held: "The statute requires that a contractor seeking to secure the benefit of its provisions, shall file in the clerk's office an account (which is an itemized or detailed statement of the transactions to which it relates) of work done and material furnished; and, therefore, a paper in the following words, viz.: 'To balance of account rendered for work done and material furnished for your house,' is not sufficient to create the lien provided by the statute." It will be seen that this decision is under a statute different from our own. In that case the lienor is required to file, within the time specified after the completion of the work, in the clerk's office among other things "a true account of the work done or material furnished," while our statute requires "a just and true account of the amount due him after allowing all credits." Counsel also cite several cases from Pennsylvania and one other case under the Virginia statute, *Withrow Lumber Company* v. *Glasgow Investment Company*, 101 Fed. Rep. 863; also a case from Iowa and one from Nebraska, all of which are under different statutes from ours and are not here controlling. As to the item of $875.00 in plaintiff's lien, it is set out in the mechanic's lien, exhibited with the bill.

"To erecting and constructing third story addition to the said building, making alterations and improvements in the first two stories thereof as per contract, $875.00."

Plaintiff in his testimony concerning different items swears to the correctness of it and says they had no contract for that work as to the price to be paid for it, that Taylor told him to go ahead and do it and charge what was right and he did so. This was for erecting and constructing a third story addition to the building making alterations and improvements on the first and second stories, for which the sum of $875.00 was charged and he states that when he gave C. B. Taylor his account the only item that "he kicked on" was the item of $10 for a plank walk around the building. It is objected that no dates are given for any of the different jobs. This was a running account for a large amount of work done upon the building and appurtenances commencing in the summer of 1902 and it was shown that the work was completed on the 2nd of December, 1902. In some of the cases cited by defendant's counsel the dates of performing the work and furnishing the material are required by the statutes to be given, but the only date material under our statute is as to the time the work was completed or the last of the material furnished and it is proven in the case of each and all of the liens herein that the work and material furnished as to the last item necessary to the completion of the work were furnished and performed within the sixty days before the filing of the lien as required by the statute. The item of $275.00 for building and digging a cellar it is claimed was done under a specific contract and was completed in the summer of 1902, that no lien was filed therefor within sixty days, therefore it should not have been allowed. The record shows that this work was carried on along with the rest of the work and in connection with it and was a part of the improvements put upon the same property, and the fact that a specific contract was made for any particular part of the work has no significance and does not change the fact that the improvements were being put upon the same property at the same time and it was entirely proper to include all the work in one account. The question is, at the completion of the work what was due and still owing for the work performed for which a lien might be taken? If the contract for the item of $275,00, being as claimed a specific con-

tract, could not be included in the lien because of that fact, then under a contract for the performance of certain work any change made in the plan which change would be under a specific contract for a stated amount would also preclude such change from the benefit of the general lien for the work because under that theory everything in the nature of a specific contract during the performance of the work would have to be the subject of a separate lien.   This exception is not well taken.

The sixth exception is the item of $35.00 charged for the construction of a fence around the hotel building, and the seventh exception is an item of $10.00 for constructing a board walk around the same.   Our statute, section 2, chapter 75, Code, provides the lien "for constructing, altering, repairing or removing a house, mill, manufactory, or other building, appurtenances, fixtures, bridge, or other structure by virtue of a contract with the owner or his authorized agent."   In *Henry* v. *Plitt,*, 84 Mo. 237, it is held: "Our statute gives a lien for fences and walks on the premises, when they have been constructed as appurtenant to the buildings, and at the same time."   In this case, the Judge when rendering the opinion, says: "They have been so adjudged in other states under statutes more limited in the words employed than our own."   And in *McDermott* v. *Claas*, 104 Mo. 15: "Where walks and fences are constructed under one entire contract for the erection of a building, the mechanic has a lien for the labor and material expended on them."   The board walk and the fences around the house are appurtenant to and necessary for the convenient use and occupancy of the building and are properly covered by the lien.

The eighth exception is as to the item of $50.00 for erecting and constructing a sample room.   It is contended that this item should not be allowed because it was a distinct contract and building.   It was built in connection with the hotel and as a part of it and for the reason given in relation to the item of $275.00 the same was properly overruled.   The same applies to the eleventh exception to the item of $35.00 for the erection and construction of a coal house and as to the twelfth exception to the item of $16.00 for erecting and constructing a cross-fence, the same was properly overruled for the reasons given as to the sixth and seventh exceptions

touching the fence around the building and the board walk.

The thirteenth exception goes to the items of $20.40 for twelve hundred feet of ceiling and $12.00 for hanging doors to closets and building claiming that these items were under special contract and should have been the subject of a separate mechanic's lien, and the exception is not well taken for the reasons before given with reference to such special contracts.

The fourteenth exception is as follows: "Fourteenth: The commissioner refused to allow undisputed credits which should have been given exceptor. The Thacker work and work on office amounts to $852.50, crediting the two checks of $250.00 each on Thacker work would leave $352.50 due for which no lien is set up in this case. The other credits amount to $1,523.55 and were to be credited on the Moose Hotel (see depositions of Taylor, page 49) reducing amount for removing house, $800.00. This would leave to go on said lien $723.55 instead of $200.00, which seems to have been deducted from lien by commissioner. All the disputed credits were disallowed. It was also shown that the item charged of $875.-00 was exorbitant, and three carpenters jointly testified that about $600.00 was fair estimate for such, after adding twenty per cent thereto for contractor. This large preponderance should have reduced that item at least $275.00; other items were likewise shown to be overcharged—commissioner failing to give any credit for such overcharge." This exception involves many credits claimed by defendant on account of the mechanic's lien of plaintiff. Considerable evidence was taken concerning these matters and was very conflicting. The defendant filed many checks paid to plaintiff some of which he claimed were to be applied on the plaintiff's mechanic's lien, and the commissioner failed to mention or pass upon any item of credit so as to enable the court to determine whether the same were properly allowed or rejected, nothing to show what credits, if any, other than those allowed, and they do not appear, should have been applied to the payment of the mechanic's lien and which were claimed by defendant should be so applied, and does not designate a single credit claimed and disallowed. In *Gage* v. *Arndt*, 121 Ill. 491, it is held: "Not sufficient on such a reference to report the testimony *en masse*, and the amounts in the aggregate, with no reference to items

claimed and disallowed." *Ransom* v. *Davis*, 18 How. (U. S.) 295; *Dewing* v. *Hutton*, 40 W. Va. 521; *Hanley* v. *Potts*, 52 W. Va. 263. The exception fourteen should have been sustained.

The rest of the exceptions taken to the report are to the account or lien of defendant Cox and the exceptor refers to the first five general exceptions made to the lien of the plaintiff and are adopted by the exceptor here. These have already been disposed of. The second exception is, "That the account filed is insufficient and uncertain. The same shows not only work done on the Moose Hotel, but upon Sample Room, Coal House, and Sewer Work for which no lien can be had upon said building." The sample room and coal house, as we have seen, are appurtenant to and a part of the hotel. In 20 A. & E. E. L., 310, it is said: "In Massachusetts it has been held that a mechanic's lien may be acquired for the construction of a drain pipe from the cellar of a house into a sewer in the street, for such drain pipe is a part of the house." In the Massachusetts case referred to Judge Allen says: "The piping, inside of the house, and outside of it to the sewer, was necessary to the use of the house and a part of it, and was included in the contract for building it. The house would be incomplete and unfinished without the pipe, and it would pass by a deed of the house as a part of it. It is immaterial whether it was inside or outside the walls of the house, or whether it extended one foot or thirty feet." It is as much a part of the house and equally as essential as a chimney or a flue to carry off the smoke. Indeed, the house could not be used without it. The third exception to the lien of defendant Cox is as to the item of $475.00 for heating contract, boiler $50.00, and four radiators $40.00. This was claimed to be under a separate and distinct contract for a specific sum and was completed more than sixty days before filing of said lien, and claiming that the heating could not be tacked upon the plumbing contract so as to bring it within the sixty days. The same argument applies to this as to the items of $875.00 and $275.00 in the lien of J. H. O'Niel. The account of Cox was a running account beginning July 4th and ending December 10th, 1902. The sixth exception is that the whole plumbing account on the hotel should not be allowed because not filed within sixty days, but

we have seen that it closed on the 10th day of December, 1902, and was filed and recorded on the 9th day of February, 1903, this would be more than sixty days between the 10th of December and the 9th of February, but in the year 1903, the 8th of February happened on Sunday which under the statute not being counted brought the filing and recording within the sixty days. The seventh exception to the Cox lien which is as follows: "Seventh: If the lien was well taken the commissioner has failed to give credit for undisputed payments and off-sets: Commissioner only decreased said lien from $1,544.57 to $1,346.44, less than $200.00—in some way. A check for $100.00 at first positively denied but afterwards admitted; and a judgment of $268.33 paid for Cox by defendant, which judgment was for material including in plumbing—making $368.33 which should have been allowed instead of one less than $200.00:" is subject to the same criticism as exception fourteen to the claim or lien of plaintiff O'Niel as far as it concerns the failure to show what claims of credits were disallowed and which allowed. The eighth exception to the lien of defendant Cox is that the commissioner did not allow an abatement or recoupment for the failure of the heating apparatus to heat the building and a large abatement for bad plumbing. There was a good deal of testimony offered by defendant to prove the heating apparatus to be very defective and its failure to do the service it was intended to do, and on the other side to prove that it was entirely efficient when managed and controlled by one who understood it; there was evidence tending to prove that the defendant for a time had an ignorant inefficient negro in charge of the heating apparatus, and that when he discharged him he employed an indolent, careless white man who was but little, if any, better, sometime drunk and sometimes away from his duties. The evidence touching the efficiency of the heating apparatus and also the quality of the plumbing was very conflicting, and the commissioner having found for the lienor on this matter and his finding having been confirmed by the court, this Court will not disturb the decree in that respect.

It is assigned as error to decree the mechanic's lien of O'Niel and Cox, if they are held to be liens at all upon Lots Nos. 1 and 2, as the Hotel Moose is claimed by defendant

Taylor to be located on Lots Nos. 3, 4, and 5. I find no evidence as to the location of the hotel on the square of ground as far as the numbers of the lots are concerned. The whole of Lots Nos. 1, 2, 3, 4, and 5 of Block 17 constitute one lot or piece of ground 125x100 feet and it nowhere appears in the record that it is located on any particular part of said ground. The deed of trust of July 31st, 1903, executed by Charles B. Taylor to Charles H. Jones, trustee, conveys "Lots Nos. 3, 4, and 5 of Block No. 17 as shown on the plat of the said town of Williamson and being what is locally known as Hotel Moose." This is the deed of trust given to secure to the Bank of Williamson the sum of $4,000.00. The mechanic's liens describe the property upon which the hotel is located as Lots Nos. 1, 2, 3, 4, and 5 and if the hotel had been confined to Lots Nos. 3, 4, and 5 or any other particular lots in said plat of ground it would have been an easy matter to show it. The property was conveyed by W. J. Williamson and wife by deed dated the 6th day of May, 1902, to Charles B. Taylor as Lots Nos. 1, 2, 3, and 5 and an undivided half interest in Lot No. 4; and on the same day Parlee Williamson and husband conveyed to said Taylor the one undivided half of said Lot No. 4. It is true that defendant Taylor in his answer says that the building is situate on Lots Nos. 3, 4, and 5 but not on Lots Nos. 1 and 2 or either of them, but there is a replication to his answer and no proof taken on that point. It would appear from the record that the whole plat or block was under one enclosure.

The sixth assignment of error is that the court decreed the sum of $300.00 as counsel fees for the plaintiff. This is conceded to be erroneous and is not contended for by the defendant, but it appears from a supplemental record brought up on *certiorari* that the defendant gave notice that he would move to correct the decree by setting aside that part of it decreeing the said $300.00 and tendered and filed in the clerk's office in vacation on the 16th day of June, 1904, a release of said decree for said $300.00, but the circuit court refused to take any action upon it because it said it was without jurisdiction while the case was pending in the supreme court of appeals.

The seventh error assigned is the overruling of plaintiff's

demurrer to the bill setting up the liens. This is disposed of by the liens being held sufficient.

The eighth assignment set out in the petition: "It was error to decree the sale of lots Nos. 1, 2, 3, 4 and 5, for the payment of the liens adjudged in favor of the Bank of Williamson on one of said liens, to-wit, the sum of $4,000.00, as it did not consist in a lien against lots Nos. 1 and 2." This assignment is well taken because the deed of trust to secure the $4,000.00 was only executed upon the three lots Nos. 3, 4, and 5 and did not include lots Nos. 1 and 2. The commissioner's report as well as the decree was correct in that regard except that part of the decree which provides for the sale and it should not have decreed the sale of the whole property together, but the three lots Nos. 3, 4 and 5 should have been sold separately.

For the reasons herein stated that part of the decree which provides for the sale of the property and as far as the decree overruling exception No. 14 to the commissioner's report touching the mechanic's lien of O'Niel, and the seventh exception concerning the lien of defendant Cox and the allowance of $300.00, counsel fees to plaintiff, be and the same is reversed, and in all other respects the decree is affirmed; and the cause is remanded to the circuit court of Mingo county for recommittal to the commissioner to report upon the various credits which should be allowed and which should be disallowed as set out in the said fourteenth and seventh exceptions respectively; and for further proceedings to be had therein according to the principles laid down in this opinion and the rules governing courts of equity.

*Affirmed in part.    Reversed in part.*