**REDMAN et al. v. MURRAY W. SALES CO.**

**SAME v. NATIONAL MILL SUPPLY CO.**

(Circuit Court of Appeals, Sixth Circuit. June 7, 1920.)

Nos. 3365, 3366.

1. Mechanics' liens ⊶132(1)—The filing of an affidavit within limit is jurisdictional.

   The filing of an affidavit for a mechanic's lien under the Michigan statutes, within the time limit, is jurisdictional.

2. Mechanics' liens ⊶132(10)—Where owner bought material from time to time, affidavit within 60 days after last order held sufficient.

   Under Comp. Laws Mich. § 14796, declaring that any person, who shall in pursuance of any contract, express or implied, written or unwritten, furnish any labor or material in or for building, shall have a lien therefor, and section 14800, declaring that a materialman shall file a verified statement or account within 60 days from the date on which the last materials shall have been delivered, a materialman who agreed to supply owner with materials needed for repairs, and furnished materials as ordered, though there was no definite contract, is entitled to a lien for all the materials supplied, where less than 60 days elapsed between the various orders, and an affidavit was filed within 60 days after the last material was furnished, for the transaction may be considered as single; the owner by subsequent orders allowing the previous ones to be carried over, and notwithstanding the owner gave a mortgage during the repair period.

3. Mortgages ⊶154(2)—Mortgagee of building being repaired held charged with notice of materialman's lien.

   One receiving a mortgage while building was being repaired is charged with notice of materialman's right to lien.

Appeal from the District Court of the United States for the Southern Division of the Eastern District of Michigan; Arthur J. Tuttle, Judge.

In the matter of the receivership of the St. Clair Power Company. The claims of the Murray W. Sales Company and the National Supply Company for liens for material furnished were allowed, and Walter H. Redman and others in each case appeal. Affirmed.

Suit to enforce a lien for materials furnished. The pertinent Michigan statutes, found in the Compiled Laws of 1915, are as follows:

Section 14796: "Every person [a] who shall, in pursuance of any contract, express or implied, written or unwritten, existing between himself as contractor, and the owner * * * of any interest in real estate, build * * * [or] repair * * * or [b] who shall furnish any labor or materials in or for building * * * [or] repairing * * * any * * * building * * * and every person who shall, [c] as[1] subcontractor, [d] laborer, or materialman, perform any labor or furnish materials to such original or principal contractor or any subcontractor, in carrying forward or completing any such contract, shall have a lien therefor upon such * * * building * * * and also upon the entire interest of such owner * * * in and to the lot or piece of land * * * to the extent of the right, title and interest of such owner * * * at the time work was commenced or materials were begun to be furnished by the contractor under the original contract, or by the subcontractor who furnishes or is furnished with any labor or material."

Section 14800: "Every * * * materialman * * * who wishes to avail himself of the provisions of this statute, shall make and file * * *

---

[1] The word "be," in the statute, is probably a misprint for "as." See previous law.

a just and true statement or account * * * which statement shall be verified by affidavit. Such verified statement or account shall be filed within 60 days from the date on which the last of the materials shall have been furnished * * * by the person claiming the lien, which statement may be in the following form: * * * A. B.. * * * being duly sworn, says that he furnished certain labor (or materials) in and for * * * repairing * * * a certain ———, situated on the land hereinafter described, in pursuance of a certain contract with C. D., the owner, (or * * * contractor, subcontractor * * * as the case may be). The performance of such labor (or the furnishing of such materials, or both) was begun on the ——— day of ———, and the last of such labor was performed (or such materials furnished or both) on the ——— day of ———: * * * "

"The property of the St. Clair Power Company having been sold in receivership proceedings in the court below, questions of priority in the proceeds arose between mortgage bondholders and receivership certificate holders, on the one hand, and lien claimants, on the other. The District Court, confirming the report of the master, gave priority to the liens. The mortgage interests bring these two appeals. The mortgage securing the bond issue may be considered as taking effect January 2, 1917. In the summer of 1916, some new interests acquired title to a disused paper mill, which title became vested in the paper company.

The claim of the National Mill Supply Company has this history: On August 31, 1916, there was a conversation between an agent of the supply company and the president of the paper company. The latter said they were starting in to make general repairs, in order to put the mill in good condition for operating, and wished to know whether they could get from the supply company such materials as the latter handled—which were boiler tubes, piping, paint, cement, etc. The things chiefly in the minds of the two parties seem to have been the ability of the supply company to ship promptly and the ability of the paper company to pay. The former became satisfied that the latter was entitled to ordinary trade credits, and announced that it would furnish to the paper company, from time to time, such materials as the latter might order for this job, and would make prompt shipment at reasonable prices and on usual terms. For the purposes of this opinion, we assume that the paper company did not agree to order any definite amount of materials, and that, until there was a subsequent specific order, it incurred no enforceable obligation, and then only from time to time to the amount of each individual order. Pursuant to this arrangement, materials needed and used in this same general and continuing repair job were ordered and shipped as follows: September 9, 1916, $65.78; December 1, 1916, $921.60; February 28, 1917, $302.50. Each of these items was separate, in that it was ordered by itself, shipped by itself, and became separately due and payable at the expiration of the specific credit given. Indeed, it might be assumed, as was true in the companion case, that some items were separately settled and paid for. All were parts of one transaction, in that they were all items of the contemplated course of business covered by the general arrangement that the supply company would furnish what was ordered for the job.

The supply company filed its statement of account on April 2, 1917. No question is made as to the right to a lien (as of that date) for the item of February 28th, but it is urged that, as to the earlier items, more than 60 days had elapsed after the materials were furnished, and it was too late to fix a lien by filing the statement.

Wallace T. Stock, of New York City (Lewis & Kelsey, of New York City, on the brief), for appellants.

Ralph B. Wilkinson, of Detroit, Mich. (Wilkinson & Hinkley, of Detroit, Mich., on the brief), for appellee Murray W. Sales Co.

J. F. Wilson, of Port Huron, Mich. (Moore & Wilson, of Port Huron, Mich., on the brief) for appellee National Mill Co.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

266 F.—18

DENISON, Circuit Judge (after stating the facts as above). [1-3] The filing of the affidavit within the time limited is jurisdictional (Godfrey Co. v. Kline, 167 Mich. 629, 133 N. W. 528), and the question to be decided is whether, when there has been a succession of purchases of materials for use in repairing a manufacturing plant, each purchase being a distinct sale, upon which a separate right of action arose, and the successive sales not being covered by any general advance contract binding upon both parties, a statement of lien filed within 60 days after the last item will reach back and sufficiently cover all the items in the succession, or whether, on the other hand, its force is exhausted when it has reached back to the beginning of the 60-day period.

The appellant's argument is that the lien statute refers only to things done and furnished "pursuant to a contract" with the owner; that, when the section providing for the verified statement refers to "the materials" which "shall have been furnished," it must refer to those materials furnished pursuant to the contract, without which the lien cannot exist; that, unless there is a definite, mutual obligation, there can be no contract, within accepted definitions; and that, if each successive purchase stands only upon the separate contract therefor, each gives rise to a separate right of lien, which right in turn is, after 60 days, exhausted, if not exercised.

The language of the statute regarding a contract is very broad—"express or implied, written or unwritten"; but it is not easy to see how this expands the scope of the term so as to reach, for example, a proposition which had never been accepted or a tentative arrangement to be performed if the parties should thereafter reach an agreement as to details, although, in these cases, there would often be an acceptance or an acquiescence which would raise the necessary implication. The statute cannot intend to require in all cases an otherwise valid contract, because it plainly covers contracts which might be invalid under the statute of frauds; but the interest of the owner in the property is not reached by lien, unless the owner has made a contract. The Supreme Court of Michigan, in Woods v. Ayres, 39 Mich. 345, 33 Am. Rep. 396, says:

"To constitute either [an express or implied contract], the parties must occupy to each other a contract status, and there must be that connection, mutuality of will, and interaction of parties, generally expressed, though not very clearly, by the term 'privity.'"

For this reason there is difficulty in thinking that a mere indefinite arrangement and expectation that purchases will be made—as, for example, an arrangement that the merchant will supply materials for the job from time to time, if the parties can from time to time agree upon prices and conditions—would be such a contract as the statute contemplates, if a precedent general contract were essential as a binder for the different items. Whether this difficulty would be insuperable we do not decide. When we have to do with such a succession of such contracts as there is here (interpreting the facts according to appellant's contention), it is clear that there was an express contract by the owner with the materialman as to each purchase, and therefore the

underlying necessity that as to every item there must be a contract with the owner is fully satisfied.

It is open to contention that, since clause (d), as we have arranged the statute above, covers the case of a materialman furnishing materials to a contractor or a subcontractor, clause (b) must refer to the furnishing of materials directly to the owner, and since clause (b) does not contain the condition "in pursuance of any contract," either directly or by strict grammatical construction, the whole basis of appellant's argument therefore fails. However, this may be an overnice construction, and it is impossible to conceive a case where materials which are furnished to and accepted by the owner are not taken pursuant to at least an implied contract. We are inclined to disregard this distinction, and to assume that "in pursuance of any contract," etc., applies to all the various lienors contemplated by the statute.

In the provision that one furnishing the "materials for repairing" shall have a lien therefor on condition that he files his claim within a fixed time after the "last of the materials" was furnished, there is the necessary implication that all the items are held together by some common tie, but nothing to indicate that this tie must be a contract creating, at the beginning, a mutual obligation lasting until the end, and we think all requirements inherent in the language or principle of the statute are met when all the items are ordered from time to time by the owner from the materialman, and all pertain to and are procured for one matter of building or repairing, which has not been either finished or abandoned, and when there was an initial offer to furnish, for this one matter, all materials which might be ordered, though no general acceptance making a definite mutual obligation. We see no reason for requiring, as between owner and materialman, any stricter construction; nor for saying that the lien statement will not reach back to an item more than 60 days old, unless the owner was, at the earlier date, under legal obligation to buy the later item. Whenever the owner, at the later stages of the transaction, gives further specific orders for material, he is in effect consenting that these items come in under the one general transaction, and is extending the time within which statement of lien may be filed, and it seems apparent that the owner may, if he wishes, do this, as against his own interests and those of any one who steps into his shoes.

When we come to consider the case of a mortgage, given as this one was, the same reason prevails. The mortgagee, on January 2d, was bound to know that a repair job was in progress, and would have learned, upon inquiry, that materials had been furnished in December, and that further material must be had. Before the 60 days had expired from the first order, the owner had given further orders, and those had kept alive or extended the right to file the lien, and on January 2d that right in the materialman was absolute. The mortgagee took with notice of this fact, and, as to the materials furnished before that date, it cannot be seriously prejudicial to the mortgagee that the owner, instead of compelling the immediate filing of the statement of lien by refusing or neglecting to make further specific orders, has given these orders and thus kept alive the same right which existed on January 2d.

Articles which were furnished after that date presumptively added to the mortgagee's security and give scant basis for claim of prejudice. The mortgagee knew or was bound to know that a right to impose a lien for the articles already furnished then existed, and that this right was likely to be extended to the materials necessary to finish the job then in progress, if the owner thought best to order the remaining materials from the same source. There is no serious hardship to such a mortgagee. If he objects to the possibility of such a future lien for the remaining materials needed upon a pending job, he can, as a condition of the loan, require the owner to discontinue the work or get the materials elsewhere.

We are not required to consider a case where the 60 days had expired when the mortgage was given, and where, therefore, the right to the lien was gone, unless the owner, at his option, bought more materials. In such a case, it would depend upon the future discretion or whim of the owner whether the right to lien should be restored, and the mortgagee could not know or learn the condition of the title in this respect. The intervention of the mortgage interest after the materialman had lost all right to impose the lien would raise a somewhat different question; the common tie, the unity of purpose, might be thought broken; on the other hand, a mortgagee, chargeable with notice when he takes his mortgage that a repair job is in progress, is subject, generally, to the equities existing against his mortgagor. We do not undertake to pass upon the question so presented.

It is to be remembered that there is no statutory requirement for unity of contract; unity of purpose well satisfies every theory of unity necessarily implied from the statute; and it has been natural to look for a single contract covering all items, because that would demonstrate unity of purpose. There is analogy, too, in the rule that a time limitation on a right of action runs from the last item in a running account. While this is or may be statutory, it illustrates that a series of specific contracts may, for some purposes, be construed as one transaction.

Our conclusion is in general accord with the results reached by the Supreme Court of Michigan in the two cases that most resemble this: Smalley v. Gearing, 121 Mich. 190, 79 N. W. 1114, 80 N. W. 797; Union Trust Co. v. Casserly, 127 Mich. 183, 86 N. W. 545. True, each case carries more or less implication that an entire contract was necessary, but whatever contract was essential was found to exist; and it is not easy to see that there was any greater obligation upon Casserly to order the later items of lumber than there was upon the paper company to give the February order which it did give. The criterion quoted in 127 Mich. at page 185, 86 N. W. at page 546, from Phillips on Mechanics' Liens, is not, as counsel say, solely whether the whole should "form one matter of settlement." That was an alternative. The other was, "if the several parts form an entire whole." However, we are better satisfied to rely also upon our study of the principles of the statute rather than to rely alone upon these two decisions.

Noye Co. v. Thread Co., 110 Mich. 161, 67 N. W. 1108, is not inconsistent. There was a formal and complete contract, and the court

held that the work under it had been finished and the contract closed by final settlement. It refused to allow this closed contract to be tacked to a new and later one. That is not necessarily to forbid the tacking of consecutive orderings of fractional parts of the same general lot of materials. The thought of the citation from Phillips on Mechanics' Liens, § 324, "So, if materials be furnished under distinct contracts, each must stand of its own merits, and the lien must be filed under each contract within the time limited," is sufficiently satisfied, if it be applied to a case like Noye Co. v. Thread Co.

It is familiar knowledge that large quantities of building materials are furnished by dealers therein and used in the erection or repair of buildings, etc., merely upon specific from day to day orders and without any agreement which would prevent collection of the price of each item as if it were wholly separate from the others, but pursuant to a general offer to provide the whole as and if specifically ordered. In these so-called running accounts, it may often happen, and perhaps is usually true, that there is no obligation of any kind upon either party relating thereto preceding the giving and accepting of the order for each item. If appellants are correct, the materialman, in such a case, cannot allow more than 60 days to expire after the first item before filing claim of lien therefor, and each item must have corresponding treatment. We think such a construction would be against the spirit of the Michigan act, is not required by the Michigan decisions, and would be against the analogy of those decided cases which are best considered and arise under the most similar statutes. Jones v. Swan, 21 Iowa, 181; Premier v. McElwaine Co., 144 Ind. 614, 621, 43 N. E. 876; State v. Norwegian, etc., 45 Minn. 254, 255, 47 N. W. 796; O'Neill v. Taylor, 59 W. Va. 370, 379, 53 S. E. 471; Big Horn v. Davis, 14 Wyo. 455, 458 et seq., 84 Pac. 900, 85 Pac. 1048, 7 Ann. Cas. 940; Hensel v. Johnson, 94 Md. 729, 733, 51 Atl. 575; Joplin v. Oklahoma, etc., 36 Okl. 547, 552 et seq., 129 Pac. 40.

What has been said fully covers the appeal of the Murray W. Sales Company. Appellant's theory is there more difficult to sustain, in that we would hesitate to find the absence in fact of an entire contract which would be sufficient even under appellant's theory.

The order of priority in each case is affirmed.