# CHARLESTON.

IRA B. KEYS, ADMINISTRATOR, v. MARY A. KEYS et al.

Submitted January 24, 1923.   Decided January 30, 1923.

1.   WORK AND LABOR—*Services by One Member to Another Member of Family in Close Relations of Consanguinity Presumed Gratuitous; Past Services no Consideration for Subsequent Promise to Pay Between Relatives in Close Consanguinity Without Prior Express Promise.*

   The general rule is that services rendered by one member to another member of a family standing in close relations of consanguinity are presumed to be gratuitous, and that without a prior express promise by the member upon whom or for whom such services are rendered, such past services will constitute no consideration for a subsequent promise to pay for them.   (p. 35).

2.   SAME—*Writing of Person Benefitted Evidencing Intention to Pay for Services Rebuts Presumption of Gratuity.*

   But where the nature of the services are such that the parties must be presumed to have intended payment therefor, and there is, as in this case, some note or writing of the person benefitted evidencing an intention that the services should be paid for, the presumption that the services were intended to be gratuitous is thereby rebutted.   (p. 36).

3.   APPEAL AND ERROR—*Court May Render Judgment on Competent Evidence for Services Rendered by Member of Family to Another Where Presumption of. Gratuity Rebutted.*

   If the competent evidence in such a case substantially proves the amount and character of such services, the court may disregard the evidence of the plaintiff rendered incompetent by section 23 of chapter 130 of the Code, and pronounce judgment on the contract as proven.   (p. 36).

Appeal from Circuit Court, Tyler County.

Suit by Ira B. Keys, administrator, against Mary A. Keys and others.   From a decree by defendants, plaintiff appeals.

*Affirmed.*

*Robert L. Bland,* for appellant.
*J. Ramsey,* for appellees.

MILLER, PRESIDENT:

The present controversy arose in a suit brought by plaintiff to convene the creditors of the estate of E. M. B. Keys, deceased, to settle his accounts as administrator of said estate, and to subject to sale for the payment of his debts the real estate left by decedent, the bill alleging the personal estate to be insufficient to discharge said debts and liabilities.

The appellee Ona Stark, a granddaughter of said decedent, being made a party to said suit, and who answered the bill, appeared before the commissioner in chancery to whom the cause was referred, and in accordance with the allegations of her answer proved that her name prior to her marriage to D. J. Stark was Ona Birtholy, wife of — Birtholy; that during her marriage to said Birtholy, she with her two children resided at the home of her said grandfather for a period of about two years, taking care of him, and her grandmother, both very old people, and of her aunt, an invalid; that her grandparents were quite feeble, and her grandmother and aunt were helpless all the time, and her grandfather most of the time, and that they had to be cared for like babies; that she not only cared for and nursed them, but much of the time fed the hogs, horses, sheep, cattle and chickens, milked the cows and did the domestic work for the entire family; that during her term of service and after she had been working and caring for them in this way for about a year, her said grandfather executed and delivered to her a note, which she produced and filed with the commissioner, as follows: "Camp, W. Va., Jan. 26, 1916. I promise to pay to the order of Ona Birtholy $1000.00 for work at my death." Signed; "E. M. B. Keys;" that he died in December, 1920, when the note by its terms became due and payable, and that it had not been paid. Her evidence so far as it related to personal transactions with the decedent was objected to, on statutory grounds, but she proved by her brother substantially the same facts and the value and extent of her services. And by other competent witnesses she proved the genuineness of the signature of decedent to said note. No evidence

was offered by the plaintiff contradicting the fact of the making and delivery of the note.

The commissioner, however, reported against the validity of the note, but the court sustained Mr. Stark's exceptions thereto and decreed the same a valid lien against said estate, and decreed that she be paid her distributive share out of the assets of said estate in the final distribution thereof; and from that decree the plaintiff and administrator has appealed.

Three propositions of law are relied on to reverse the decree: First, that being a member of decedent's family and standing in the relationship of grandfather and granddaughter, the presumption is that Mrs. Stark's services were gratuitous; Second, that in the absence of any evidence of a prior express contract that her services were to be paid for, said note, if actually executed and delivered at the time it purports to have been made, was without any consideration and was not an enforceable obligation against decedent's estate; Third, that the evidence of Mrs. Stark being incompetent, there was no proof of an express contract of employment, her evidence being shut out by section 23 of chapter 130 of the Code.

Among the authorities relied on for the first proposition are our cases of *Stansbury* v. *Stansbury's Adm'rs.*, 20 W. Va. 23, 31; *Hurst's Adm'r.* v. *Hite,* Id. 183.; *Riley* v. *Riley,* 38 W. Va. 283; *Cann* v. *Cann,* 40 W. Va. 138; *Thompson* v. *Halstead,* 44 W. Va. 390; *Swiger* v. *Evans,* 75 W. Va. 236; and *Updike* v. *Titus,* 13 N. J. Eq. 151; *Harshberger's Adm'r.* v. *Alger,* 31 Gratt. 52; and *Jackson's Adm'r.* v. *Jackson,* 96 Va. 165.

For the second proposition counsel cite and rely on among other authorities, 1 Elliott on Contracts, section 18; 1 Williston on Contracts, section 3; 1 Daniel on Neg. Inst. sections 179 and 182; *Gooch* v. *Gooch,* 70 W. Va. 38; *Harris* v. *Orr,* 46 W. Va. 261; *Finch* v. *Green,* 225 Ill. 304; *People* v. *Porter,* 287 Ill. 401; *Allen* v. *Bryson,* 67 Iowa 591; and *Harper* v. *Davis,* 115 Md. 349.

It is undoubtedly true, as the authorities cited for the first

proposition hold, that services rendered by one member to another member of a family, when standing in the close relationship stated, are presumed to be gratuitous and without consideration. Appellee's counsel did not controvert the principal proposition, but relied in part on what are regarded as exceptions to the general rule. In the Harshberger-Alger case it was said that there can be no fixed rule governing such cases, and that in the absence of an express contract, the question always is, can it be reasonably inferred that pecuniary compensation was in the view of the parties at the time the services were rendered. In *Jackson's Adm'r.* v. *Jackson, supra,* right of recovery is limited to an express contract or what is equivalent thereto; if the facts proven are such that a promise can reasonably be inferred, this will be sufficient.

The converse of the proposition is that when services are performed by one at the instance and request of another, and especially when the other is benefited by the services, the law implies a contract that the party who performs the services shall be paid a reasonable compensation therefor, unless there be something in the relationship of the parties or the circumstances of the case which precludes the idea of such compensation. It was so held in *Hurst's Adm'r.* v. *Hite, supra.* And this rule is recognized, if not applied, in some, if not all, of the other cases cited by counsel, to the dealings between near relatives, as in the case at bar. In several cases where a son has made a claim for services rendered his father, it has been decided that recovery should be denied unless he proves an express contracts or facts clearly showing an expectation or an intention on the part of the father to pay therefor. *Cann* v. *Cann, Riley* v. *Riley,* and *Harris* v. *Orr, supra.*

In this case we not only have the note, established by proof of decedent's signature thereto, but we have the fact proven by testimony other than the payee of the note, that she continued her services as much as a year or more after its execution. It does not on its face purport to be for work done prior thereto; it may have been intended for work to be done in the future, but whether for one or both, if the work done

was performed under such circumstances as to clearly imply a promise for compensation, this would be sufficient. *Alkire* v. *Orchard Company,* 79 W. Va. 526. As already indicated, in the case last cited, this rule is applicable to transactions between father and son. The case of *Clark* v. *Gruber,* 74 W. Va. 533, is particularly pertinent to the case under consideration, and to the value of the note relied on as probative of an express promise. That case involved a transaction between son-in-law and father-in-law and a claim of himself and wife for services, for food, nursing, etc., the mother-in-law being afflicted with a cancer, and where the father-in-law was shown to be amply able to compensate the claimants for their services. One of the facts shown was that prior to his death, the father-in-law had made provisions in his will for such compensation, which fact was communicated to the plaintiff and relied on by him, although such will was subsequently revoked by the marriage of the testator and the making of a new will.

In addition to the note the competent evidence shows that Mrs. Stark, then Mrs. Birtholy, was able bodied; that her father lived in the same county, where she could likely have gone for shelter and protection; that at the time she entered upon the services her grandmother and aunt were both invalids, and that in place of two infants of her own to care for, she had practically four to care for, and that much of the time the old gentleman was incapacitated by age and infirmity, so that she was obliged to perform many of the duties devolving on a man servant, such as milking the cows, feeding the cattle, hogs, sheep and chickens, and that she did all the menial services about the house. Would it be reasonable to suppose that all these services were to be done without compensation? Was there any moral obligation on Mrs. Birtholy, because of her relationship, to perform all these services without pay? On the contrary, do not the nature of the services and the circumstances clearly import a promise to pay her therefor? There were other nearer relatives in the same community, who were under greater obligation to take care of these old people than Mrs. Stark, but

they did not do so. It is hardly conceivable that such services would be accepted at her hands without the legal obligation to pay for them.

If we deny the enforceability of the note as an obligation for past services, this could not be conclusive of appellee's right; it is not limited in its terms to services rendered in the past; it is as competent to reach forward as a promise to pay for the year or more services rendered after it was made; and whether it would be regarded as excessive compensation for those services we need not inquire, for as was said in *Bade, Admr.,* v. *Feay,* 63 W. Va. 166, being a note payable at the death of the maker and in its nature testamentary, we are not called upon to reverse the judment of the maker as to the value of Mrs. Stark's services. The note held binding on the estate of the maker in that case reached backwards as well as forwards as compensation for services rendered, and the facts in that case were less potent to establish the necessary express promise than those in the case at bar.

Of course all the evidence of Mrs. Stark relative to her work and labor and services rendered for the deceased and the things she did in and about such work and labor was incompetent and not admissible under section 23 of chapter 130 of the Code. *Owens* v. *Owens' Adm'r.,* 14 W. Va. 88; *Barrett* v. *Andrew,* 81 W. Va. 283; *Davidson* v. *Browning,* 73 W. Va. 276. But the case does not depend on her evidence. That she rendered the services as claimed is substantially proven by her brother. She was competent to produce the note bearing the signature of her grandfather, which on its face said it was given for work, and no affidavit being interposed denying the signature, it stood as proof of the indebtedness to the extent of the amount thereof. Section 40, chapter 125 of the Code. *Hanly* v. *Potts,* 52 W. Va. 263; *Robinson* v. *Dix,* 18 W. Va. 528; *Maxwell* v. *Burbridge,* 44 W. Va. 248; *Mankin* v. *Davis,* 82 W. Va. 757; *Loverin & Brown Co.* v. *Bumgarner,* 59 W. Va. 46.

We are of opinion that the decree should be affirmed.

*Affirmed.*