# CHARLESTON.

LAFAYETTE S. WHITEMAN, *Administrator*, v. THOMAS E. BACKUS AND SUSANNAH D. BACKUS

(No. 5684)

Submitted October 20, 1926.    Decided October 26, 1926.

APPEAL AND ERROR—*Decree Based on Conflicting Evidence is Not Generally Disturbed.*

First point in syllabus of *Ross* v. *McConnaughy*, 85 W. Va. 199, applied. (457.)

(Appeal and Error, 4 C. J. § 2870.)

2.  GIFTS—*Gift During Donor's Last Illness Will be Presumed to be Gift Causa Mortis, Though he Says Nothing Indicating Belief That Sickness May be Fatal.*

When a gift is made by a donor in his last illness a short time before his death, though he says nothing which would indicate a belief that the sickness would prove fatal, a gift *causa mortis* will be presumed, and not a gift *inter vivos.* (p. 460.)

(Gifts, 28 C. J. § 136.)

3. SAME—

Where a gift is made *causa mortis*, it must be proven by evidence much stronger and clearer than proof of a gift *inter vivos*.   (p. 460.)

(Gifts, 28 C. J. §§ 140, 140 [Anno].)

4. WITNESSES—*Grandsons of Donor Are Not Incompetent to Testify to Gift Causa Mortis Because They Are Sons of One of Donees and Nephews of Another (Code, c. 130, § 23).*

The evidence of the grandsons of the donor of a gift *causa mortis*, that such gift was made, is not incompetent and inadmissible under Sec. 23, Chap. 130, Code, simply because they are the sons of one of the donees and nephews of another of the donees.   (p. 461.)

(Witnesses, 40 Cyc. p. 2321.)

5. GIFTS—*Evidence Held Sufficient to Establish Gift Causa Mortis.*

A case in which the evidence of a gift *causa mortis* is held to be sufficient to establish the gift.   (p. 461.)

(Gifts, 28 C. J. § 140.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of Syllabi.)

Appeal from Circuit Court, Harrison County.

Suit by Lafayette S. Whiteman, administrator of Elizabeth H. Backus, deceased, against Thomas E. Backus and another. Decree for plaintiff, and defendants appeal.

*Affirmed in part; reversed in part; remanded.*

*Homer Strosnider,* for appellants.

*Coffman & Morris,* for appellee.

LIVELY, JUDGE:

Elizabeth H. Backus, widow, died intestate on September 30, 1921, and her administrator instituted this suit against her son Thomas E. Backus and daughter Susannah D. Backus, charging that his decedent accumulated during her widowhood beginning in 1897, $13,561.10, derived from pension, sale of coal, inheritance from Coffman estate, sale of land, timber, rights of way for pipe line, and oil and gas rental and bonuses; that she was of frugal habits, and that her estate was in the hands of the two defendants, and asked for a discovery

of, accounting for, and recovery of the property and moneys in their hands belonging to the estate. There were three other children, her heirs at law, namely, Mary E. Hildreth, Louisa E. Webb and Amanda D. Backus, and the suit is for their benefit. This suit is a controversy between brothers and sisters over the division of the maternal estate. The bill also charged that Thomas and Susannah had conspired together to defraud the mother out of her money and had succeeded in doing so. The original bill was against Thomas, who denied the charges, and after depositions were taken, an amended bill was filed making Susannah a party defendant, and charging the conspiracy. The answers denied the conspiracy, and denied that defendants had in their hands any property belonging to the estate. Susannah in her answer set up for cross-relief a claim for services rendered her mother. The evidence deals with the relations existing between defendants and the mother affecting her property.

The decree complained of requires Thomas to pay to the administrator $787.84, with interest from September 6, 1921, being part of a sum deposited on interest in a bank by the mother which sum amounted in all to $1,359.28 on September 6, 1921; and that Susannah pay to the administrator the remainder of that principal sum, namely, $507.85, with interest from September 6, 1921; and that Thomas also pay to the administrator the further sum of $100.00 with interest from September 8, 1921, being a part of $488.86 which was on deposit in another bank in the name of the mother, and on the said date withdrawn by Thomas, $388.86 of which was applied by him to payment of funeral expenses and medical bills and the like incident to the death of the mother. The decree absolves defendants from the charge of fraud and conspiracy, and denies to Susannah her prayer for affirmative relief.

The errors assigned against the decree are that the evidence does not justify the decretal judgments; that the court excluded and refused to consider legal evidence tendered on behalf of defendants; and that it was error to refuse affirmative relief to Susannah. Cross-error is assigned by appellee to the effect that the decretal judgments should have been for more

money against each of the defendants, because they failed to show that the use of moneys received by them from the mother over a period of twenty years had been strictly accounted for.

A vast volume of depositions and documents constitutes the evidence. The mother became a widow in 1897, and at that time owned in her own right a farm of about 214 acres. Thomas, her only son, lived near by, and she naturally turned to him for help in the conduct of her affairs. He responded. Susannah never married, and continued to live with her mother until the latter's death, ministering to her in her old age and sickness. About one year before her death the mother was taken to the home of Thomas near by, where she died September 30, 1921. She received a pension which was expended by her for groceries and the like. She sold the coal under the land and placed the money in the bank. She received moneys from pipe line rights of way over the land, and from an oil and gas lease executed by her in 1907, and other inconsiderable sums from other sources. She was frugal. The evidence indicates that she and Susannah had mutual interests in the personalty on the place, and they lived together, expending their savings for their mutual benefit. Thomas was assisting, and acted for his mother in her business transactions. The other daughters married, and at two periods in the widowhood of the mother two of them and their families resided with her on the farm and received partial support while there. One of the sisters of defendants at one time borrowed about $1,100.00 from the mother, and it is contended that it was never repaid. Another sister received a gift of about $300.00. Thomas kept no books of his dealings for the mother or of the funds which came into his hands for her; nor did she keep any books. Much of the evidence is to show his dealings. In 1906, she deeded to him about 97 acres of the farm for a consideration of $800.00, reserving a lifetime support. In May, 1918, she deeded to Susannah about 60 acres in fee for services rendered, also reserving lifetime support.

A short time before the death of the mother, she had in the "Wallace Bank" the sum of $488.86 derived from the gas lease, and the sum of $1,359.28 deposited in the Union National

Bank on a certificate of deposit. The decree deals with these amounts, necessarily refusing plaintiff any relief against Thomas because of his dealings and accounts with the mother prior to the time these two sums were withdrawn from the banks by him; and refusing Susannah relief for services claimed to have been rendered the mother in her last days. On the conflicting and unsatisfactory evidence the court was justified in this regard, and we will not disturb the decree on the cross-assignment of error by appellee, nor upon the assignment of error of appellant Susannah to the effect that she should have had affirmative relief for alleged services. She received the deed for sixty acres for services; and after that time, without express contract clearly shown, her services (and it was natural that she would do so), are presumed to be gratuitous. A decree based on conflicting and unsatisfactory evidence is not generally disturbed. *Ross* v. *McConnaughy*, 85 W. Va. 199.

So, we will now consider the decree in so far as it has rendered judgment against Thomas and Susannah in favor of the administrator, arising out of the two sums on deposit in the banks. First, as to the $100.00 judgment against Thomas, we find that on September 6, 1921, he withdrew from the "Wallace Bank" the $488.86 on deposit, at the mother's direction, to pay funeral expenses, doctor bills, taxes on the land for 1921, and, according to the evidence of Thomas, he was to keep for himself any sum left after these expenditures. He expended this money in payment of the items directed to be paid (and which were for the benefit of the estate), but there was left in his hands $100.00 unexpended, and which he appropriated to his own use. We do not find competent evidence to sustain his statement that he was directed to keep the surplus, if any. His evidence on that point cannot be considered, for it relates to a personal communication between himself and the deceased and falls within the inhibition of Sec. 23, Chap. 130, Code. Susannah and John Backus and Virgil Backus, sons of Thomas, corroborate Thomas in the statement that the $488.86 was directed to be withdrawn from the bank by Elizabeth, the mother, to pay the funeral ex-

penses, doctor bills, taxes, &c., but they do not say that he, Thomas, was to have the surplus. Thomas is not corroborated by them as to the disposition of any surplus. Appellant's counsel asserts that the $488.86 in the "Wallace Bank" was not the money of the mother, but that it was Susannah's money derived from the quarterly payments on the gas well drilled on her sixty acres of land deeded to her in 1917 (which deed was not recorded until 1919), and placed in the bank to the credit of the mother as it had theretofore been done; and reliance is put upon the evidence of the banker to the effect that the sums placed in his bank to the credit of the mother were derived from gas rentals. Much of the money so deposited was withdrawn and used for the upkeep of the household. If any of it equitably belonged to Susannah, it is not clear what amount was withdrawn and used for her benefit; besides a lifetime support was retained by the mother in the land, and all treated the money as belonging to the mother both by declaration and acts. Acting upon this evidence the trial chancellor decided that it was the mother's money, and the surplus, after paying the purposes for which it was to be used, belonged to her, and entered judgment accordingly. On this evidence we will not disturb the $100.00 judgment in the decree.

We now come to the finding that the $1,359.28 on time certificate in the Union National Bank withdrawn on September 6, 1921, belonged to the mother's estate, and the decretal judgments against Thomas and Susannah in favor of the administrator for the respective amounts thereof received by them.

It will be recalled that the mother was then at the home of Thomas, and was in her last illness which terminated in her death on September 30, 1921. No question of mental incapacity on her part to make disposition of her property is raised; nor that she was influenced by Susannah and Thomas to dispose of this money, to the extent of subsisting their will in place of hers, *in vinculus,* as the textbooks state it. Although uneducated, and without capacity to keep books, it is shown that she always knew the approximate amount of

money to her credit in the bank. On this occasion she signed the certificate of deposit over to Thomas by mark witnessed by her two grandsons, and delivered it to Thomas with the direction that he should send or take it to the bank and withdraw the money and divide it between himself and Susannah. Susannah and Thomas were present and testified to the above. Their evidence of that transaction was clearly inadmissible, and without evidence from disinterested witnesses, the gift could not be made effective. The court properly sustained the exceptions to their evidence, and did not consider it. But it appears from the evidence of John and Virgil Backus, grandsons of the decedent, sons of Thomas, that she called them to witness the transaction. And they both state unequivocally, and without being shaken by cross-examination, that she signed the certificate by mark, which signing was witnessed by them; that she handed the certificate to Thomas with direction to take or send it to the bank and divide the money between Susannah and Thomas. Whether it was a gift *inter vivos* or *causa mortis* does not appear from their testimony. They do not say it was in settlement of a past obligation. They simply state clearly what was done.

It is generally held that when a gift is made in the donor's last illness a few days or weeks before his death (in this case two weeks), though nothing be said by the donor to indicate that he thought the illness would prove fatal, the gift will be presumed to be *causa mortis* and not *inter vivos*. *Meach* v. *Meach*, 24 Vt. 591; *Nicholas* v. *Adams*, 2 Whart. (Pa.) 17; *Seabright* v. *Seabright*, 28 W. Va. 412. If a gift be *causa mortis* it must be proven by clear evidence, much stronger than when it is *inter vivos*.

We are of the opinion that the above evidence of the grandsons, taking into consideration the intimate relations existing between the donor and donees, is sufficiently clear and strong to prove a gift *causa mortis*. Susannah had remained with the mother all her life and had taken sedulous care of her in her sickness and declining years. Thomas, her only son, had always been at her service, and had taken her to his home where she received care for more than a year. The other

sisters were not over assiduous in their administrations to her. They had families of their own to care for. And they had received help from her after they were married. It was natural and commendable that she should desire to see Thomas and Susannah rewarded.

It is stated in appellants' brief that the chancellor in announcing his decision from the bench said that the exceptions to the evidence of the grandsons would be sustained, and their evidence not considered, on the ground that they were interested in the result of the case. However, the decree does not sustain the exceptions to their evidence; it only sustains the exceptions to that of Thomas and Susannah, which relates to personal communications and transactions between them and their mother. Appellee argues that the exceptions to the evidence of the two grandsons should have been sustained; and it is contended that they were interested parties, although not parties defendant. That they were sons of Thomas and nephews of Susannah would not disqualify them as interested in the result of the suit under Sec. 23, Chap. 130, Code. *Hollen* v. *Crim,* 62 W. Va. 451; *Hudkins* v. *Crim,* 64 W. Va. 225; 13 Ency. Dig. Va. & W. Va. Reports 937. It is said they have an interest because John Backus was deeded the 97 acres by his father, on which the mother had reserved a lifetime support; and that Virgil was renting a portion of Susannah's land without charge, on which a like support had been retained. The grandmother was dead and there was no longer any obligation on either of the tracts for her support, even if the claim of incompetency on the ground stated was tenable.

For the reasons stated, the decree will be reversed in so far as it renders judgment against Susannah D. Backus for the sum of $505.80, with interest from September 6, 1921; and in so far as it renders judgment against Thomas E. Backus for the sum of $787.84, with interest from the same date; and the decree will be affirmed as to the judgment against Thomas E. Backus for $100.00, with interest from September 8, 1921, and affirmed in all other respects, except as above stated, and the cause remanded.

*Reversed in part; affirmed in part; remanded.*