# CHARLESTON.

BESSIE McKINNEY *v.* REBECCA RHINEHART *et al.*

(No. 5679)

Submitted October 26, 1926.     Decided November 9, 1926.

1.. GIFTS—*Note Transferred by Maker to Payee as Gift is Not Enforceable by Payee Against Maker's Estate.*

A promissory note transferred by the maker to the payee named therein as a gift is not enforceable by the payee against the estate of the maker.  (p. 535.)

2.  SAME—*Where Payee, With Knowledge and Acquiescence of Maker, Credits on Note Made as Gift Sum Paid by Maker, Maker's Estate is Not Entitled to Credit Therefor, in Action by Payee on Such Note and Other Notes, Though Latter Were Due When Credit Was Made.*

But where the payee of such note, during the lifetime of the maker, and with his knowledge and acquiescence, credits on the note a sum paid him by the maker, the maker's estate will not be entitled to credit for such sum in a suit by the payee to recover the note and other notes found to be valid, though the latter were due and payable at the time the credit was made.  (p. 535.)

Appeal from Circuit Court, Wyoming County.

Action by Bessie McKinney against Rebecca Rhinehart and others:  From an adverse decree, plaintiff appeals.

*Reversed and remanded.*

*J. Albert Toler,* for appellant.

*C. M. Ward, G. C. Trail* and *D. D. Ashworth,* for appellees.

102 W. Va.

Miller, Judge:

The plaintiff, Bessie McKinney, brought this suit against the heirs at law of Dr. R. B. Lester, deceased, and the administrator of his estate, to recover from the estate the amount of three notes, two of which, dated February 11, 1921, for $500.00 each, were secured by a deed of trust on real property owned by Dr. Lester at the time of his death. The third note, for $1,000.00, with a credit of $200.00 endorsed thereon, was dated May 11, 1923, and unsecured. From the final decree in the cause, the plaintiff appealed.

From the evidence taken before the special commissioner to whom the cause was referred, it appears that from some time in the year 1916 the plaintiff lived with Dr. Lester in the house owned and occupied by him, except for short periods when one or the other of them were absent on visits, until a few weeks before his death, which occurred in 1924. During this time two children were born to plaintiff, of whom Dr. Lester was reputed to be the father.

In July 1920, Dr. Lester received for a right of way a check for $1,999.00, which he endorsed and delivered to plaintiff, who deposited the same to the credit of her account in the Bank of Wyoming. About the same time, Dr. Lester, as a loan to plaintiff, delivered to her his check for $800.00, payable to one Vida Bishop, from whom plaintiff was purchasing a house and lot, which check was later delivered to the said Vida Bishop, and she received payment on the same. Some time later plaintiff delivered to Dr. Lester her check for $800.00, dated July 23, 1920, in payment of the loan to her by him. Before depositing this check in the Bank of Wyoming, Dr. Lester changed the amount called for therein to $1,999.00. A dispute arose about these transactions, and plaintiff employed counsel to assist her in recovering the amount of the $1,999.00 check, which she claimed Dr. Lester had given to her on account of their children. Counsel for plaintiff in this matter testified that after he had had some correspondence or conversation with Dr. Lester and the bank officials, Dr. Lester came to him and announced that all matters in difference between him and plaintiff had been settled, and asked him to

prepare a written agreement setting out the result of the settlement. By this paper, entered into, signed, and acknowledged by the parties on February 11, 1921, Dr. Lester acknowledged the fact that he was the father of plaintiff's children, the agreement further reciting: "Now, therefore, this contract Witnesseth: That for and in consideration of the sum of two thousand dollars, the sum of five hundred dollars being cash in hand paid, the receipt of which is hereby acknowledged, the balance to be paid in three equal installments of five hundred dollars each, in 6, 12 and 18 months from date, which consideration is to be used in keeping, maintaining and educating the children, as aforesaid, the said first party, doth hereby, release the said second party from any further liability on his part, for having been designated as the father of said children, as aforesaid, and further hereby releases the said R. B. Lester, on account of herself, as well as on account of her said children, Doris Lester and Norva Lester, and accepts said amount in full settlement as aforesaid."

According to the testimony of plaintiff, Dr. Lester paid her by check of March 1, 1921, the sum of $500.00, and executed his three notes for $500.00 each, dated February 11, 1921, payable to her order in six, twelve, and eighteen months. On February 21, 1922, plaintiff took from Dr. Lester a deed of trust to secure two $500.00 notes dated February 11, 1921. Sometime thereafter, it does not clearly appear when, plaintiff instituted an action against Dr. Lester before a justice of the peace to recover a balance alleged to be due her on a $500.00 note. According to counsel for each of the parties to that action, Dr. Lester defended on the ground that he had paid $200.00 on the note in controversy which had not been credited thereon. Plaintiff admitted the receipt of the $200.00, but testified that it had been credited on another note, for $1,000.00, made by Dr. Lester, and payable to her. This note, bearing date of May 11, 1923, when produced, showed a credit of $200.00 as of July 23, 1923. Dr. Lester seems to have been satisfied with this credit, and confessed judgment before the justice, and paid the balance on the note sued on.

As to this $1,000.00 note, plaintiff testified before the commissioner, on cross-examination, that it was given to her for her and the children; that she afterwards pledged this note as collateral in securing a loan of $200.00 from the Bank of Mullens; and that later, at Dr. Lester's suggestion, she credited him on this note with the sum of $200.00 paid by him to her. The cashier of the Bank of Mullens testified that plaintiff borrowed $200.00 from his bank, on a note as collateral. His recollection was that the collateral was a $500.00 note; but he would not say that it was not a $1,000.00 note. The two $500.00 notes were at one time in his bank for collection.

The commissioner found that the estate was indebted to plaintiff in the amount of the two $500.00 notes with interest from date; but that the $1,000.00 was not a valid claim against the estate, because plaintiff had accepted the two thousand dollars named in the agreement of February 11, 1921, in full satisfaction of all claims against Dr. Lester on account of herself and the children, and that the note was, therefore, without consideration.

Both the plaintiff and the defendants filed exceptions to the commissioner's report. Defendants then filed an amended answer, praying for affirmative relief, and for the first time alleging that they should be credited with the $800.00 loaned to plaintiff by Dr. Lester, by his check of July 14, 1920, payable to Vida Bishop. Plaintiff demurred to the answer and replied specially thereto.

By the final decree complained of the court found that plaintiff was entitled to the full amount of the two $500.00 notes with interest from date, but that she was indebted to the estate in the sum of $800.00 with interest thereon from July 14, 1920, on account of the loan to her of that date, and for the $200.00 credited on the $1,000.00 note, with interest thereon from the date of the credit; and found that plaintiff was entitled to the sum of $1.80, for which a decree was entered in her favor.

Defendants contend that the note sued on in the action before the justice was one of the notes sought to be recovered

on in this suit, because the contract of February 11, 1921, recites a consideration of $500.00 "cash in hand paid the receipt of which is hereby acknowledged," while the check to plaintiff for $500.00, produced by them, was dated March 1, 1921. Their theory is that this check represents the second installment named in the contract. There is no evidence to support this theory. One note was cancelled when Dr. Lester "allowed judgment to go against him, and later settled the judgment," as testified to by counsel in that action. And it appears that a number of credits had been endorsed on this note prior to the time of the action before the justice. The suit was for the balance due. What became of this note does not appear; but the fact remains that plaintiff still had two of the notes at the time of the hearing on the present suit; and she swears that nothing had been paid on either of them.

The commissioner and the circuit court found that the $1,000.00 note was without consideration. "A promissory note cannot operate as a gift, for, as such, it would be unexecuted and incomplete, amounting only to a promise to give." *Bade, Admr.* v. *Feay et al.*, 63 W. Va. 166, and cases cited; Ann. Cas. 1914-C, note p. 1139; 26 L. R. A., note p. 305; 12 R. C. L. 940.

"Where, however, the donee, by reason of the execution and delivery of the note, has been induced to change his position by spending money or incurring liability, payment of the note may be enforced and the donor or his representatives will be estopped from asserting its validity on the ground of want of consideration. And where the donee with the consent of the donor negotiates the note and receives the proceeds during the donor's lifetime, it has been held that it cannot be contended that the gift was invalid." 12 R. C. L. 941, and cases cited. In such case the gift will be upheld upon the ground of estoppel, and not by reason of any valid consideration in the original undertaking. *Beatty* v. *Western College*, 177 Ill. 280, 69 Am. St. Rep. 242, 42 L. R. A. 797.

Did the circuit court err in charging plaintiff with the $200.00 credited on the note found to be invalid as a gift? At the time of the trial of the action before the justice Dr.

Lester acknowledged that this amount was properly credited on the $1,000.00 note, and did not claim credit for it on the note then sued on, after he was informed that credit had been given on the other note. To this extent the gift became executed, whatever may have been the occasion of the execution and delivery of the note in the first instance. If the note was without consideration, and amounted only to a gift, Dr. Lester acknowledged the gift of the $200.00 by permitting it to be credited on the note. No doubt plaintiff spent the money on the theory that she would not be asked to repay it, and to require her to account for it now would be unfair to her. There is no evidence of any promise to repay, and no presumption to do so arises under the circumstances of the case. Although by the agreement of February 11, 1921, plaintiff released Dr. Lester from further liability on account of herself and her children, that fact would not prevent him from giving her money on that account, or for any other reason, thereafter.

As to the $800.00 loaned plaintiff by Dr. Lester's check of July 14, 1920, the circumstances surrounding the agreement of February 11, 1921, seem to indicate that the consideration named therein was to adjust all the matters in controversy between the parties arising out of the transactions of July 14th and 23rd, 1920. It is said that that agreement only in terms settled the rights of plaintiff in regard to her children and released Dr. Lester from further liability on that account. But it appears that the settlement evidenced by that agreement grew out of the same matters in which the $800.00 transaction was involved; and plaintiff's contention at that time was that the $1,999.00 check was given her on account of the children. Whatever was his purpose in endorsing and delivering the original $1,999.00 check to plaintiff, Dr. Lester chose a very unusual way for recovering the money. And immediately after he had raised her check and deposited it in the bank to his credit, plaintiff employed counsel to assist her in securing the return of the money thus withdrawn from her account; and later the parties announced to her counsel that they had settled the matter and asked him to prepare the contract, which they both signed, sealed and acknowl-

edged. Nothing seems to have been said about the $800.00; and it appears that the agreement of February 11, 1921, settled for the time all matters in difference between the parties growing out of the check transactions. This was long before the suit in the justice's court; and we find no evidence of any further controversy about the $800.00. We think the agreement of February 11, 1921, was intended by the parties thereto, to include the matter of the $800.00 check.

In view of our holding as to this $800.00 item, it becomes unnecessary to respond to plaintiff's exception to the ruling of the circuit court in permitting defendant's amended answer to be filed after the filing of the commissioner's report.

The decree will be reversed, and the cause remanded for further proceedings in accordance with the views herein set out.

*Reversed and remanded.*