# CHARLESTON.

ORAN C. OGDIN *Administrator etc. v.* THE FIRST NATIONAL BANK OF ST. MARYS *et als., Defendants Below,* LUCILE B. WENTZ, *Appellant*

(No. 5829)

Submitted October 26, 1926.    Decided May 10, 1927.

1. EXECUTORS AND ADMINISTRATORS—*Niece Presenting Note Against Aunt's Estate for Services Rendered Aunt Has Burden to Establish Rendition of Reasonable Services on Express or Implied Promise of Payment.*

   Where a promissory note for $45,000.00 is asserted by a niece against the estate of her aunt the consideration therefor being for alleged services rendered by the former to the latter in her declining years, the burden of proof rests upon the niece to establish that reasonable services were rendered upon an express or implied promise of payment.   (p. 672).

   (Executors and Administrators, 24 C. J. § 2172.)

2. WORK AND LABOR—*Services Usually and Commonly Rendered to Close Blood Relative Are Generally Presumed Gratuitous; to Show Services Rendered Close Blood Relative Constitute Consideration for Note, Intention to Pay Therefor at Time Must be Shown.*

   Services usually and commonly rendered by one standing in close blood relationship to the person to whom they are rendered, are generally presumed to be gratuitous; and to rebut that presumption the services must be shown to have been of such a nature and rendered under such circumstances as would evince an intention of payment at the time rendered, in order to constitute consideration for a note subsequently executed.   (p. 675).

   (Work and Labor, 40 Cyc. pp. 2815, 2823.)

3. APPEAL AND ERROR—*Where Evidence of Controlling Fact Conflicts, Lower Court's Finding Will Not be Disturbed Unless Clearly Wrong; Finding That Niece Had Not Rendered Services Sufficient as Consideration for Note of Deceased Aunt Based on Conflicting Testimony Will Not be Disturbed on Appeal.*

   Where the evidence of a fact which controls the issue is uncertain, vague and conflicting, the finding of the lower court thereon will not be disturbed unless clearly wrong.   (p. 677).

   (Appeal and Error, 4 C. J. § 2855.)

   (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Pleasants County.

Suit by Oran C. Ogdin, administrator of the estate of Emma W. Standiford, deceased, against the First National Bank of St. Marys and others, to settle his accounts as administrator and for other relief. From a decree based on a finding that a note presented against the estate by defendant Lucile B. Wentz was without consideration and delivered subsequent to the death of the decedent and was a gift, the last-named defendant appeals.

*Affirmed.*

*G. D. Smith* and *Frank J. Barron,* for appellant.

*C. P. Craig,* for appellee Ogdin.

*Russell, Hiteshaw & Adams,* for appellees Wilson and others.

Lively, Judge:

Plaintiff, administrator of the estate of Emma W. Standiford, deceased, instituted this chancery suit to settle his accounts as administrator; to determine what amount was due the decedent's estate as residuary legatee of her deceased husband, B. F. Standiford; and to convene the creditors of Mrs. Standiford's estate, and ascertain their debts and order of priority. In her answer to plaintiff's bill, defendant Lucile B. Wentz (appellant here), set up a $45,000.00 note of plaintiff's decedent, payable to appellant, as a debt against the estate. The commissioner to whom the cause was referred made no finding on appellant's claim, but the lower court, from the pleadings, and the evidence taken by the commissioner, found that the note was without consideration, was delivered subsequent to the death of Emma W. Standiford, and was a gift, by reason of which it was not enforceable. This appeal followed.

The First National Bank of St. Marys, executor of the estate of Emma W. Standiford's deceased husband, B. F. Standiford (who had died less than a year before his wife), also brought an action to have the debts against its decedent's estate determined. That cause and the instant one were re-

ferred to the same commissioner in chancery, and it was agreed that insofar as applicable the evidence taken in each cause could be considered in the other.

The issue on the note in question was raised by the answer of appellant, Lucile B. Wentz, and the replications filed thereto by plaintiff administrator and by certain heirs of the decedent, Emma Standiford, in which replications it was averred that the note was without consideration, and that it was unenforceable because a gift. The note is as follows:

"No.....................
Due.................
"San Antonio, Tex March 9, 1925
On demand after date I promise to pay to the order of Lucile B. Wentz Forty-five Thousand Dollars \$45,000./00 at THE FIRST NATIONAL BANK OF ST. MARYS, W. Va. Value received with costs of collection plus 10 per cent. of principal and interest as attorney's fees in case payment shall not be made at maturity.
EMMA W. STANDIFORD
P. P. Box 1292 San Antonio Texas."

When the commissioner in chancery sat to hear evidence in this cause, appellant introduced the note in evidence and stated that she had received it in due course, and that she had not received payment. The signature of the maker was duly proved. Upon cross-examination by counsel for certain heirs of the decedent, she testified that the body of the note was in the handwriting of her son; that it was delivered to her by her husband and son; that, "The object of that note, as near as I can explain it, was auntie's desire to make me her sole heir;" that it would be a gift in a way, "and in a way it would be earned;" that the note was delivered to her in West Virginia. On re-direct examination, when asked by her counsel to tell all the circumstances connected with the delivery of the note to her husband and son, she replied, "Well, all I know about that transaction is what my husband and son informed me as to their understanding of the agreement." She was not permitted to give this information. Appellant further said that the first she knew of the exist-

ence of the note was "early in the summer". (Her aunt died on May 20, 1925.) On re-cross-examination, she said that the note did not come into her possession until the latter part of October.

At a later date, appellant was recalled to the stand, and in answer to questions propounded by her counsel, testified that when she had said no consideration had been given for the note, she had understood "consideration" to mean either money or property transferred; that the consideration for the making of this note by her Aunt Emma was "services I had rendered them (meaning her aunt and uncle) over a period of years," and "love and affection she held for my family and myself." She further said that her aunt had within the past few years spent three winters with her in Texas, staying from three to six months during each of these visits; that her aunt made no payments for the time she spent in appellant's Texas home. Appellant later stated, in proving a check for $150.00 against the decedent's estate, that this money was given in part payment of the aunt's expenses, because on her last visit she had agreed to share expenses with appellant. Her uncle had also accompanied his wife to Texas on two of these visits. In a letter written by appellant to one of her relatives, in which she sought to have the relative renounce whatever rights she may have had in the decedent aunt's estate in favor of appellant, (which letter was introduced in evidence by appellees), the statement is made that for a number of years of appellant's married life her aunt and uncle spent from three to six months each year in her home; that they paid no board, "and it was never thought of, as they always said my children and I were to have all they had after the legacies were paid." In this letter, written on June 9, 1925, she made no mention of the $45,000.00 note.

It appears from the evidence that when appellant was six years of age, her mother died, and she went to live with the Standifords. Her father furnished her clothing, books and spending money from that time until he died, when she was thirteen years of age. The Standifords provided her support,

schooling, and maintenance from the date of her father's death until she reached the age of seventeen, when she was married. Appellant was of the opinion that her services rendered during this period off-set any benefit derived by her from their support and maintenance. In the early part of her married life, appellant's husband attended a medical college in Louisville, Kentucky, and during the four-year course, appellant spent five months of each of those years with the Standifords. She says she paid her expenses when so living with them, although she admitted that she paid no room-rent during that time.

Appellant and her uncle (Mr. Standiford) had engaged in a number of real estate deals extending over a long period of time. Several deals were made in West Virginia, and in one transaction in Texas she and her uncle purchased twenty acres of land jointly. He made the initial payment of $1,000.00, but not desiring to complete the deal, deeded her his interest therein the year of his death, after she had come to nurse him during his last illness. Appellant has now paid all of the purchase price of $8,000.00, with the exception of $1,000.00. She said the consideration for the $1,000.00 advanced by her uncle was ''services'' rendered.

Three notes signed by appellant, for sums aggregating $1,950.00, and one signed by her husband for $1,000.00, were found among the papers of her deceased uncle. They were appraised as assets of his estate, but appellant in testifying before the commissioner, said these notes had been delivered to her by her uncle, although they were found among papers part of which belonged to him and part to her. Her recollection of payment of these notes, was, to say the least, rather hazy. Appellant objected to the commissioner considering them, because, first, they were her property, and second, they were barred by the statute of limitations.

Two notes, one for $1,000.00, signed by Emma W. Standiford and Frank S. Wentz (son of appellant), dated Feb. 23, 1925, payable to the order of the First National Bank of St. Marys, and upon which Frank Wentz received the money; and one note for $500.00, signed by Emma W. Standiford

and appellant, payable to the order of the First National Bank of St. Marys, dated Jan. 30, 1925, and upon which appellant received the money, were proved against the aunt's estate, subject, however to their primary satisfaction out of certain legacies left by the uncle's will and assigned by appellant and her son Frank to secure their payment.

Appellant's uncle in his will left legacies amounting in all to about $24,000.00, to relatives. His wife, Emma W. Standiford, was named as the residuary legatee. As such, she would have received approximately $30,000.00, but owing to the alleged embezzlement of a large part of the uncle's estate by a relative named Smith, the estate of the residuary legatee will receive approximately $7,000.00 from the uncle's estate. This is the principal asset of the decedent aunt's estate, because most of her other property will be used up in paying her debts. She died intestate. Under the will of her uncle, appellant and her husband received legacies of $500.00 each, and $4,500.00 in legacies was left to her children.

When appellant's uncle became ill in 1924, she came from Texas to take care of him, and she nursed him and performed the domestic services about the house during the four months of the illness of which he died. She was an experienced nurse, and there can be no doubt that she rendered valuable service to her uncle, both as a nurse and as a domestic in taking entire charge of the house. For these services she filed her claim against his estate, for $805.00. By reason of the fact that only a part of the record in the suit brought by the uncle's executor, is included in the record in the instant case, it does not appear whether this claim was allowed or not. Counsel for appellees stated in argument that it had been allowed.

In 1925, appellant's aunt had just returned from a long visit to appellant's Texas home, when she was stricken ill and died within two or three weeks. Upon receipt of news of her aunt's death on May 20, 1925, appellant returned to St. Marys, and has remained there ever since, living in her aunt's house.

The facts above detailed are all those which the record discloses as having any bearing upon the question before us, namely, what was the consideration for the $45,000.00 note?

It is well settled that if there was no consideration, then the note must fail as a gift. *Bade* v. *Feay,* 63 W. Va. 166; *McKinney* v. *Rhinehart,* 102 W. Va. 531.

Counsel for appellant contend that the evidence establishes that the note was executed and delivered for a valuable consideration; that it was in the nature of a testamentary disposition and that the burden of proof rested upon defendants to show by a preponderance of the evidence that such was not the case. *Bade* v. *Feay, supra,* is relied upon as being directly in point. In that case a nephew of the decedent set up against her estate a note for $6,000.00, payable one year after date, duly executed by the aunt and delivered to him. Want of consideration was relied upon as a defense. A number of witnesses testified that in statements made to them by the decedent she had declared her intention of rewarding the nephew for the services he had rendered to her, by leaving him practically all of her estate. It was established by competent evidence that the nephew had worked for many years on his aunt's farm, for which work he had received no pay; and that a number of years later, after the death of the aunt's husband, he rendered services to her during the last few months of her life. This court held that there was sufficient evidence of the rendition of the services, and that the adequacy of the consideration would not be inquired into, because the transaction was in the nature of a testamentary disposition.

In our latest decision on this question, that of *Keys, Admr.* v. *Keys et al.,* 93 W. Va. 33, there was competent evidence that the appellee, a granddaughter of the decedent, with her two children, resided at the home of her grandfather for a period of two years, taking care of him and her grandmother, both of whom were aged persons, and of her aunt, an invalid; that the granddaughter did all the domestic work on the farm, took care of the stock, and performed other tasks about the farm. After her services had continued for a year, the

grandfather executed and delivered to her a note for $1,000.00 payable at his death, it being recited in this note that it was "for work". This court held that the nature of the services and the circumstances under which they were rendered, when coupled with the execution and delivery of the note containing the statement "for work", evidenced an intention to reward the appellee for her service.

Do the facts as detailed bring this case within the principles laid down in the two decisions just cited? In answering this question, we will first determine a necessary preliminary one, namely, upon whom the burden of proof rests upon a plea of want of consideration for a note. Although there is a division of authority on this point, the rule which would seem to be the most logical, and which is followed in probably the majority of jurisdictions in this country, is to the effect, that while the production of a negotiable note with the admission or proof of signature, make out a *prima facie* case for the plaintiff and casts upon defendant the duty of going forward with the evidence to rebut this presumption, yet the burden of proof in the sense of the "risk of non-persuasion" rests upon the plaintiff throughout the trial of the case. *Huntington* v. *Shute,* 180 Mass. 371; *Tremont Trust Co.* v. *Brand,* (1923), 244 Mass. 421, 138 N. E. 564; *Hudson* v. *Moon,* 42 Utah 377, 130 Pac. 774; and cases cited in note in 35 A. L. R. page 1376. And the rule is the same although the instrument recites on its face, "for value received". *Huntington* v. *Shute,* 180 Mass. 371; and cases cited in note 35 A. L. R. page 1380.

There can be no doubt that the testimony of appellant as to why the note was given to her, would have been incompetent under Sec. 23, Chap. 130, Code, but appellees have waived this disqualification, made her their witness, and have attempted to rebut the *prima facie* case made out upon the production of the note and proof of signature, by proving through her testimony that there was no consideration for its execution. By this procedure appellees have not only made competent her testimony with respect to transactions taking place

between her and the deceased, but having made her their witness on this point, they are bound by her testimony.

With the exception of the evidence as to the services rendered by appellant to her uncle during his last illness, for which she proved her claim for $805.00 before the commissioner, appellant was the only witness to testify as to any services rendered by her to her aunt and uncle. Her son to whom the note had been delivered, and whose handwriting appeared in the body of the note, was not a witness. His testimony would have been competent, (*Whiteman* v. *Backus,* 102 W. Va. 454), and appellant's case was greatly prejudiced by the absence of this material witness.

There is no evidence of an express agreement on the part of the aunt to reward appellant for services rendered, by giving her this note, and can we say that her evidence alone, the surrounding circumstances, and the nature of the services and conditions under which they were rendered, make it clear that it was the intention to so reward her? The appellant's evidence is somewhat contradictory regarding this point. At one place in her testimony she says that there was no consideration for the note, that it was given to her by her aunt in order that she might become her sole heir; that it was a gift in a way, but in a way it was earned. But at a later date, after having had the technical meaning of the word "consideration" explained to her, she says that she did not mean that the note was without consideration, but that it was given for services furnished to her aunt and uncle over a long period of time. She then said that during the time she had lived in Texas, they had made three visits to her, staying from three to six months on each of these visits, and that she had charged them nothing during these many months. She later qualified her statement by saying that her aunt and uncle had made but two visits to Texas, and the third trip was made by her aunt after the uncle's death, and that on this last visit her aunt, knowing her financial condition, had agreed to share the household expenses. Then as further evidence there is her statement in the letter of June 9, 1925; introduced in evidence by appellees, that during fifteen years of her married life her uncle and aunt had spent from three

to six months a year with her, and that she had not charged them any board, because they said she and her children were to have everything after the legacies were paid. Appellant was unable to say that her aunt had ever told her that the note in question was given for services performed, for she did not learn of the note until after her aunt's death. Her knowledge on this score was gleaned from statements made to her by her husband and son to whom the note had been delivered by the aunt, and who had delivered it to her.

It might be well to observe at this point that the question of a proper delivery of the note will not be gone into on this appeal, because no pleading was filed on this point by appellees, and consequently no issue was made thereon.

But to return to the controlling question in this case. As was observed in *Keys Admr.* v. *Keys et al.,* 93 W. Va. 33, "The general rule is that services rendered by one member to another member of a family standing in close relations of consanguinity are presumed to be gratuitous, and that without a prior express promise by the member upon whom or for whom such services are rendered, such past services will constitute no consideration for a subsequent promise to pay for them. But where the nature of the services are such that the parties must be presumed to have intended payment therefor, and there is, as in this case, some note or writing of the person benefited evidencing an intention that the services should be paid for, the presumption that the services were intended to be gratuitous is thereby rebutted."

The nature of the services in the instant case appear to be the care and comfort bestowed upon appellant's aunt and uncle during the long visits to her home, extending from three to six months each time, over a period of fifteen years. On none of these visits (except the last one made by the aunt), did they ever pay appellant any board or room. The last of these trips were made at times when the aunt and uncle were between seventy-five or eighty years of age, or more, and, while the character of the services, other than that they stayed with appellant during these periods of time without paying board or room, is not revealed, it may be

that it would not be unreasonable to infer that appellant must have been put to considerable inconvenience and expense in caring for her aged relatives. It is of course true that ordinarily when one relative pays another a short visit, he does not expect to reimburse his host for his board and room. But where there has been a close association between relatives, extending over a period of many years, and especially when the visiting relatives are aged persons, well able to pay for their maintenance, and they spend free of expense from three to six months each year for a number of years with their niece, who is not in affluent circumstances, it would not perhaps be unreasonable to say that the aunt and uncle would expect to reward the niece for the care and comfort thus bestowed upon them during these long visits. It is true that appellant said she did not expect to have them pay her for the services thus rendered; that is, not at that time, but she says she was led to believe from statements made by them that she would be reimbursed by property left to her and her children upon their decease.

The circumstances just detailed, coupled with the execution and delivery of the note, tend to support appellant's position that the note executed by the aunt was in the nature of a testamentary disposition to reward her for services rendered. But there are other circumstances which militate against her contention. The fact that her uncle left legacies to her and her family, aggregating in all $5,500.00; the fact that he had already given her $1,000.00 in a real estate deal in which they participated, for "services"; that she proved her claim for $805.00 before the commissioner for nursing and taking care of her uncle during his last illness; the fact that she and her husband borrowed money from her uncle, the payment of which by her and her husband is left somewhat in doubt; the fact that when she was a young girl they (her aunt and uncle) had provided a home for her for many years; the fact that her aunt had become accommodation maker on notes for appellant and her son; and other facts brought out in the evidence, are not corroborative of her theory.

With the evidence in this conflicting and unsatisfactory state, we are not disposed to disturb the finding of the trial chancellor that the plaintiff has failed to establish by a preponderance of the evidence the existence of a consideration for the execution of this note. "If a decree is based upon depositions which are so conflicting and of such doubtful and unsatisfactory character that different minds and different judges might reasonably reach different conclusions as to what the real facts deducible from them are, an appellate court will not reverse it, though such court might have rendered a different decree had it acted in the cause in the first instance. *Ross* v. *McConnaughy*, 85 W. Va. 199, and kindred cases.

It may be granted that the evidence strongly indicates a desire and intention on the part of the aunt to make her niece her sole heir, and that the note was meant to serve as the means of carrying out that intention. But in order to sustain this intention by this method it must appear that the note or other writing which serves as the evidence of this intention was for services rendered. It may be that the services will not equal the value of the note or other writing, but the discrepancy in value will not be closely scanned where it is clear that the maker intended to make the payee the recipient of a testamentary disposition.

The decree of the lower court will be affirmed.

*Affirmed.*