IN RE ESTATE OF JOHN C. GILBERT, *Deceased.*

(No. 7929)

Submitted November 20, 1934.   Decided December 4, 1934.

*C. W. Good,* for plaintiff in error.

*Lon G. Marks* and *Charles M. Love,* for defendants in error.

WOODS, PRESIDENT:

On the 7th day of December, 1928, John C. Gilbert, being then about eighty-four years of age, and a widower, went to live with Martha Given, one of his four living children, and, with the exception of the period September 16, 1929, to January 14, 1930, inclusive, required in remodelling said daughter's house, resided with her until his death, August 6, 1932. A claim was made against the estate for services rendered and support furnished the father during such time on the basis of $1.00 per day, which less $338.50 in credits, totalled $860.50. The commissioner of accounts, after hearing evidence, allowed the claim. Exceptions to the report were overruled and the same confirmed by the county court. The circuit court, on appeal, disallowed the claim, and entered a charge against Martha Given for the amount of the credits set up in her claim. Martha Given prosecutes error.

"The general rule deducible from the authorities is that where a child, after arriving at majority, continues to reside as a member of the family with a parent, or

with one who stands in the relation of a parent, or where a parent resides in the family of a child, the presumption is that no payment is expected for services rendered or support furnished by the one to the other. This presumption is not, however, conclusive, and may be overcome by proof either of an express agreement to pay or of such facts and circumstances as show satisfactorily that both parties at the time expected payment to be made. Whenever, therefore, compensation is claimed in any case by either parent or child against the other for services rendered, or the like, the question whether the claim should be allowed must be determined from the particular circumstances of the case. There can be no fixed rule governing all cases alike. In the absence of any direct proof of an express contract, the question which must be determined is whether it can be reasonably inferred that pecuniary compensation was in the view of the parties at the time when the services were rendered or the support was furnished; and the solution of this question depends on a consideration of all the circumstances of the case." 21 Ency. Law (2d Ed.), page 1061.

Evidence of the situation of the parties and of the surrounding circumstances is freely received for the purpose of determining the question whether there was an understanding that payment be made.

Since there is no direct proof in the instant case of an express contract, the question which must be determined is whether an intention on the part of the father to pay and an expectation on the part of the daughter to receive pecuniary compensation at the time the services were rendered and the support was furnished, can be reasonably inferred from all the facts and circumstances. *Gardner* v. *Gardner,* 112 W. Va. 583, 166 S. E. 112; *Ogdin* v. *First National Bank,* 103 W. Va. 665, 667, 138 S. E. 376; *Keys Admr.* v. *Keys et al.,* 93 W. Va. 33, 116 S. E. 681; *Broderick* v. *Broderick,* 28 W. Va. 378; *Stansbury* v. *Stansbury,* 20 W. Va. 23.

John C. Gilbert had accumulated, during his lifetime, several thousand dollars in cash, which he kept in bank

on deposit, and was, therefore, financially able to pay for any and all services rendered and support furnished during his last years. He had frequently let it be known that this money was for such purpose. This was understood by all the heirs and distributees. At least there was no testimony to the contrary. Prior to taking up his abode with his daughter Martha, he had lived in his own home. Upon the death of his wife, a son, Louis, who together with his family had resided for eighteen years on another part of the same farm, without payment of rent therefor or taxes thereon, was persuaded to move into the Gilbert homestead. Louis died some two years later, and the latter's wife and children continued for a time to look after John C. Gilbert. It was after the daughter-in-law and her children had moved out that the aged father gave up his old home and went to live with his daughter Martha. It is an undisputed fact that the father, during the last five years of his life, was feeble both in mind and body and that he required a good deal of attention.

One of plaintiff in error's sisters, Mrs. Moles, a distributee of the estate, testified that her father had stated, on numerous occasions, that what money he had was to be used in caring for him in his old age. Another sister, Mrs. Robertson, testified that her father had said many times that Martha was good to him and had provided him a home and that she was going to get paid for it. The remaining sister, Mrs. Sigman, did not testify. George Strickland, a disinterested witness, testified that Gilbert told him he was going to make his home with Martha; that she was good to him; and that "he wanted her to be paid." Strickland's wife stated that Gilbert told her, on one of his visits, that he was making his home with Mattie (Martha) and expected the latter to be paid for caring for him while he stayed there. And, according to Roma Wolfe, decedent had in his lifetime stated, "I have a good home and am satisfied living with Mrs. Given. She takes good care of me and I expect to pay her for her trouble."

The very fact that John C. Gilbert, although financially able to provide for his own care and support, desired to

reside with his daughter Martha, rather than divide his time among his four living children, and the further fact that he remained in her care continuously, except for the short period when the latter's house was being remodelled, is, we think, some evidence that the services were rendered in expectation of pecuniary remuneration. Whatever may be the claims of filial duty and affection, as between an aged and infirm parent and his grown child, there is no principle of law which requires the child, while living separate and apart from its parent, to perform services for the latter without compensation, when the parent is in comfortable circumstances. *Parker's Heirs* v. *Parker's Admr.*, 33 Ala. 459; *Page* v. *Page,* 73 N. H. 305, 61 A. 356. And, can we say that the father having provided a fund for his care and support in his old age, did not intend it to be used as such? To ask the question is to answer it.

We think the facts and circumstances clearly indicate an intention on the parent's part to pay for the services; and that the daughter's services, under the peculiar situation here presented, were rendered upon the expectation of remuneration. The daughter has met the burden cast upon her by the law.

The judgment of the circuit court of Kanawha County is therefore reversed and the case remanded for the entry of an order in conformity with this opinion.

*Reversed and remanded.*